UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESSENCE TAYLOR and DANIEL CASHMAN *on behalf of themselves and all other employees similarly situated,* <br><br> *Plaintiffs,* <br><br> v. <br><br> BENDERSON PROPERTIES, INC.,  DELTA-SONIC CAR WASH SYSTEMS, INC., and RONALD BENDERSON <br><br> *Defendants.* | CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL <br><br> Civil Action No. <br> No. 14-cv- |

Plaintiffs Essence Taylor and Daniel Cashman ("Named Plaintiffs"), on behalf of themselves and all other persons similarly situated, (collectively "Plaintiffs"), through their attorneys, Cordello Law, PLLC and Ferr & Mullin, P.C., bring this class and collective action complaint against Defendants Benderson Development Company, Inc., Delta-Sonic Car Wash Systems, Inc., and Ronald Benderson (collectively, "Delta Sonic" or "Defendants").  This lawsuit seeks to recover minimum wages, uniform laundry and maintenance expenses, injunctive relief and declaratory relief to redress the deprivation of rights secured to the Named Plaintiffs and similarly situated co-workers who work or have worked at Defendants' 28 car wash centers in the following states: New York, Illinois and Pennsylvania.

## NATURE OF CLAIM

1.  Defendants' policy is to pay employees subminimum wage rates relying on the tip credit allowance when working in certain positions, including as Delta Technicians ("Delta Techs").  Employees in such positions are tasked with cleaning and detailing the interior and exterior of vehicles, which involves power-washing vehicles prior to entering the car wash and drying vehicles exiting the car wash.  These employees have the ability to earn tips based on customer satisfaction.

2.  Defendants also have a policy of requiring employees to wear specific uniform articles, some of which are supplied by Defendants. However, Defendants do not maintain these items or provide employees with a maintenance allowance as is required by the New York State Labor Law.

3.  Named Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of Defendants pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy the violations of New York Labor Law ("NYLL") including: New York Minimum Wage Act, Article 19, § 650 *et seq.*, and New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §142-2.5 *et seq.*

4.  Named Plaintiffs also bring this action on behalf of themselves and similarly situated current and former employees of Defendants' who elect to opt-in to this action pursuant to the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. §201 *et seq.* ("FLSA"), specifically, the collective action provision of 29 U.S.C. §216(b).  To date, in addition to the Named Plaintiffs, five individuals have already opted-in into this lawsuit.

5. At all times relevant to the litigation, Defendants' policy and pattern or practice failed to include notice of the allowances for tips on a weekly basis as a separate line item in the Plaintiffs' wage records  as required by NYLL and the supporting regulations, including 12 N.Y.C.R.R. §142-2.5(b)(1)(iii).

6. Moreover, Defendants' policy and pattern or practice did not notify these employees of the FLSA's tip credit provision 29 U.S.C. §203(m) and supporting federal regulations, including but not limited to 29 C.F.R. §516.4.

7. In addition, neither any of the Defendants, nor any of the managers of Defendants' business, provided the requisite notice to Plaintiffs regarding the tip credit as required by the FLSA

8. Accordingly, Defendants are not entitled to pay Plaintiffs subminimum wages under the FLSA or NYLL.

9. Further, Defendants' policy and pattern or practice fails to pay Plaintiffs the uniform laundering and maintenance expenses as required by NYLL and 12 N.Y.C.R.R. §142-2.5(2)(c)(1).

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4), conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. §2201; and under 29 U.S.C. §216(b).

11. This Court's supplemental jurisdiction of claims arising under the NYLL is also invoked.

12. Venue is appropriate in the Western District of New York since the allegations arose in this district, Defendants do business in this District and the Named Plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

13. The NYLL claims are properly maintainable as a class action under Rule 23.

14. The Rule 23 classes consist of the following:

I. Tip Allowance Class:   All Defendants' current and former employees who work(ed) in the last six years at Defendants' 18 New York car wash centers and did not receive a wage record, with each paycheck, that included the tip allowance claimed by Delta Sonic as a separate line item.

II. Uniform Laundry & Maintenance Class:   All Defendants' current and former employees who work(ed) in the last six years at Defendants' 18 New York car wash centers and were not paid for the uniform laundry and maintenance expenses of $8.90 per week when they worked more than 30 hours a week; $7.00 per week when they worked more than 20 but not more than 30 hours a week; and $4.25 per week when they worked 20 hours or less a week.

15. The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

16. The number of putative subclass members is over 1000.

17. The Named Plaintiffs' claims share common issues of law and fact as to whether they were paid properly and have common claims that are typical of the claims of the subclass members because they are employed by Defendants, paid subminimum wages and were not reimbursed their laundry expense for their required uniforms.

18. Common issues of law and fact predominate in this action because resolution of them will resolve a significant aspect of this litigation for each class member in one stroke including, but not limited to, the following:

- Whether Defendants violated the respective NYLL and supporting regulations by paying employees subminimum wages;

- Whether Defendants violated the NYLL and supporting regulations by failing to include the tip allowance it claimed on employees' wage records with each paycheck as a separate line item as required by 12 N.Y.C.R.R. §§142-2.5(b); and

- Whether Defendants violated the NYLL and supporting regulations by failing to pay Plaintiffs' their uniform laundering and maintenance expenses as required by 12 N.Y.C.R.R. §§142-2.5(c).

19. Further, there are no known conflicts of interest between the Named Plaintiffs and the class members.  Moreover, the Named Plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members.

20. Class Counsel, Cordello Law, PLLC and Ferr & Mullin, P.C., are qualified and able to litigate the Plaintiffs' claims.

21. The Class Counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under wage and hour laws.

22. The class action is also maintainable under subsection (2) of Rule 23(b) because the Named Plaintiffs and the class members seek injunctive relief against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein.

23. Moreover, the class action is maintainable under subsection (3) of Rule 23(b) because the Named Plaintiff and class members seek to resolve common questions of law and fact that predominate among the Named Plaintiffs and class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

24. The class action is also maintainable under Rule 23(c)(4) because resolution of common issues will significantly advance the litigation or entitle Plaintiffs to injunctive relief.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

25. Named Plaintiffs bring this action on behalf of themselves and all other similarly situated employees as authorized under 29 U.S.C. § 216(b). The employees similarly situated for purposes of the collective action are:

> All Defendants' current and former employees who were paid a subminimum wage rate in the last three years and were not properly informed of the tip credit.

26. Defendants knowingly and willfully operate their business with a policy of not paying the FLSA minimum wage to the Named Plaintiffs and other similarly situated employees.

27. At all times relevant to the litigation, Defendants' policy and pattern or practice did not notify the Named Plaintiffs and similarly situated employees of the FLSA's tip credit provision 29 U.S.C. §203(m) and supporting federal regulations, including but not limited to 29 C.F.R. §516.4. Accordingly, Defendants are not entitled to pay Plaintiffs subminimum wages under the FLSA.

28. Further, Defendants are aware, or should have been aware, that federal law required them to provide requisite notice to tipped employees of their intent to pay them less than minimum wage as required by the FLSA.

29. There are numerous similarly situated current and former tipped employees of Defendants who work or worked at Delta Sonic's 28 car wash centers who would benefit from issuance of a Court supervised notice of the instant lawsuit and the opportunity to join in the present lawsuit.

30. Similarly situated employees are known to Defendants and readily identifiable by Defendants through Defendants' payroll records.

31. Therefore, the Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).

PARTIES

A.    Plaintiffs

*Named Plaintiffs*

32. Essence Taylor was an employee of Defendants under the FLSA and NYLL, was employed within this District during the relevant time period, and resides within this District.

33. Ms. Taylor worked for Defendants from October 2007 until January 2013 at the following Delta Sonic car wash centers in New York: Irondequoit and Webster.

34. Ms. Taylor worked for Defendants as a Delta Tech and Cashier at its Delta Sonic car centers.

35. Ms. Taylor, along with other employees, was subjected to Delta Sonic's compensation policy which paid Plaintiffs at subminimum wages based upon the tip credit allowance.

36. Daniel Cashman was an employee of Defendants under the FLSA and NYLL, was employed within this District during the relevant time period, and resides within this District.

37. Mr. Cashman has worked for Defendants from December 11, 2013 through the present, at the following Delta Sonic car wash centers in New York: Irondequoit and Penfield.

38. Mr. Cashman worked for Defendants as a Delta Tech at its Delta Sonic car wash centers.

39. Mr. Cashman, along with other employees, was subjected to Delta Sonic's compensation policy which paid Plaintiffs at subminimum wages based upon the tip credit allowance.

40. However, Defendants failed to include in Plaintiffs' wage records the tip allowance claimed by Delta Sonic with each paycheck as a separate item as required 12 N.Y.C.R.R. §142-2.5(b)(1)(iii).

41. Moreover, at all times relevant to the litigation, Defendants did not notify Named Plaintiffs and those similarly situated of the FLSA's tip credit provision 29 U.S.C. § 203(m) and supporting federal regulations, including but not limited to 29 C.F.R. §516.4.

42. Accordingly, Defendants are not entitled to pay Named Plaintiffs and those similarly situated subminimum wages under the FLSA or NYLL.

43. When working as a Delta Tech, Ms. Taylor's work schedule fluctuated depending on the particular season. For instance, in the winter she worked more shifts because it was Delta Sonic's busy season given the increased demand for car washing and interior detailing. On average, Ms. Taylor worked approximately six days a week during the busy winter season. The length of Ms. Taylor's shifts ranged from 4 to 9 hours based on employee staffing and customer demand.

44. In the summer, Ms. Taylor worked fewer shifts, typically four days a week given the decreased customer demand for car washing and interior detailing during the slower summer season and the length of the shifts ranged from 4 hours to 9 hours.

45. While working for Defendants, Ms. Taylor was required to wear a uniform that included the following items: blue oxford shirt, dark blue pants, and, during colder weather, a shell jacket with the Delta Sonic logo and/or a red fleece jacket with the Delta Sonic logo.

46. When working as a Delta Tech Ms. Taylor's uniform was routinely soiled and stained, because her job duties required her to be in close proximity to dirty vehicles while she was cleaning and drying the interior and exterior of the vehicles.

47. Defendants failed to launder or maintain Ms. Taylor's required uniform as well as the uniforms of those similarly situated.

48. In addition, Defendants failed to reimburse Ms. Taylor and those similarly situated $8.90 per week, when she worked more than 30 hours a week; $7.00 per week when she worked more than 20 but not more than 30 hours a week; and $4.25 per week when she worked 20 hours or less a week, as required by 12 N.Y.C.R.R. §142-2.5(c)(1).

49. When working as a Delta Tech, Mr. Cashman's work schedule fluctuated depending on the particular season. For instance, in the winter he worked more shifts because it was Delta Sonic's busy season given the increased demand for car washing and interior detailing. On average, Mr. Cashman worked approximately five days a week during the busy winter season. The length of Mr. Cashman's shifts ranged from 4 to 12 hours based on employee staffing and customer demand.

50. In the summer, Mr. Cashman worked fewer shifts, typically two days a week given the decreased customer demand for car washing and interior detailing during the slower summer season and the length of the shifts ranged from 4 hours to 6 hours.

51. While working for Defendants, Mr. Cashman was required to wear a uniform that included the following items: blue polo shirt, dark blue pants, and, during colder weather, a shell jacket with the Delta Sonic logo and/or a red fleece jacket with the Delta Sonic logo.

52. When working as a Delta Tech Mr. Cashman's uniform was routinely soiled and stained, because his job duties required him to be in close proximity to dirty vehicles while he was cleaning and drying the interior and exterior of the vehicles.

53. Defendants failed to launder or maintain Mr. Cashman's required uniform as well as the uniforms of those similarly situated.

54. In addition, Defendants failed to reimburse Mr. Cashman and those similarly situated $8.90 per week, when he worked more than 30 hours a week; $7.00 per week when he worked more than 20 but not more than 30 hours a week; and $4.25 per week when he worked 20 hours or less a week, as required by 12 N.Y.C.R.R. §142-2.5(c)(1).

B.     Defendants

55. At all times relevant hereto, Plaintiffs were "employees" of Defendants as defined by the NYLL, § 651 and the FLSA, 29 U.S.C. §203(d).

56. At all times relevant hereto, Defendants are/were "employer[s]" as defined in the NYLL, § 651, and the FLSA, 29 U.S.C. §203(d).

57. Defendants own and operate full service car wash locations in New York, Illinois and Pennsylvania, are "enterprise[s]" as defined by the FLSA, 29 U.S.C. §203(r)(1), and are enterprises engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. §203(s)(1).

58. Defendants' employees are engaged in interstate commerce, and their annual gross volume of sales made or business done exceeds $500,000, exclusive of excise taxes.

59. During the course of their employment by Defendants, Plaintiffs handled goods, including equipment and products that moved in interstate commerce.

***Benderson Properties, Inc.***

60. Benderson Properties, Inc. ("BPI") is a domestic corporation originally formed in 1962 under the name Benderson Holding Company, Inc. It has also been known as Benderson Development Company, Inc., and has been known as Benderson Properties, Inc. since 2005.

61. BDI is one of the largest privately held real estate companies in the United States with a centralized human resource function including benefit administration, recruitment, salary administration, employee relations.

62. BDI owns and manages over 700 properties encompassing over 40 million square feet in 38 states. The diverse BDI portfolio includes retail, office, industrial hotel, residential, and 28 Delta Sonic car wash centers.

63. BDI opened its first car wash in 1967 and has expanded its car wash empire to include car wash centers in New York, Illinois and Pennsylvania.

64. BDI is the employer of Plaintiffs as it maintains control, oversight, and direction over Plaintiffs, including time keeping, payroll and other employment practices that applied to them.

65. Additional information for BDI can be found at www.benderson.com.

66. Based on these facts, BDI can be held liable as an employer of Plaintiffs for violations complained of in this matter.

### *Delta-Sonic Car Wash Systems, Inc.*

67. Defendant Delta-Sonic Car Wash Systems, Inc. is a subsidiary of BDI, and is one of the nation's largest full service car wash centers, known as the "kissing clean car wash".

68. Delta-Sonic Car Wash Systems, Inc. is a private company, which, upon information and belief, is wholly owned and controlled by BDI and Ronald Benderson.

69. Delta-Sonic Car Wash Systems, Inc. employs over 4,000 individuals in positions including Delta Techs.

70. Delta-Sonic Car Wash Systems, Inc. is a domestic business corporation formed on May 1, 1970.

71. Delta-Sonic Car Wash Systems Inc. operates a soft cloth car wash chain. It offers car wash, detail shop, oil change, and rust proofing services. The company also sells unleaded fuels and operates convenience stores at its locations in Rochester, Buffalo, and Syracuse, New York; Erie, Pennsylvania; and Chicago, Illinois.

72. Over the years, the number of Delta-Sonic car wash centers owned and operated by BDI has grown to 28 with 18 of those in New York State as of the date of this complaint.

73. Delta-Sonic Car Wash Systems, Inc. is listed on Plaintiffs' paystubs using the following address: 570 Delaware Avenue, Buffalo, New York 14202.

74. Additional information for Delta-Sonic Car Wash Systems, Inc. can be found at www.deltasoniccarwash.com.

75. Individuals can apply for positions at any of Delta Sonic's 28 locations via www.deltasoniccarwash.com.

76. Delta Sonic employees are able to transfer to other Delta Sonic car wash centers. Moreover, Delta Sonic has a centralized Human Resources team that is based in Buffalo, New York.

77. Plaintiffs' W-2 wage and tax statements list Delta Sonic Car Wash Systems' Inc., as their employer.

78. Delta Sonic Car Wash Systems. Inc., uses a centralized payroll system for its 28 car wash centers locations to administer payroll for its fluctuating workforce with employees who often work in multiple jobs in different profit centers that receive tips and may require make up pay and are paid bonuses and commissions.

79. Upon information and belief, in order to more efficiently operate and manage the Delta Sonic car wash centers under BDI's and Ronald Benderson's control, additional companies were created to help organize, systematize, and streamline operations of the various individual car wash locations.

80. Based on these facts, Delta Sonic Car Wash Systems, Inc., can be held liable as an employer of Plaintiffs for violations complained of in this matter.

***Ronald Benderson***

81. Defendant Ronald Benderson is the Chief Executive Officer of BDI and founder of Delta Sonic Car Wash Systems, Inc. Accordingly, Ronald Benderson has been involved with Delta Sonic's operations since its initial formation.

82. Ronald Benderson is directly in charge of the overall operations of Delta Sonic's 28 car wash centers.

83. As such, Ronald Benderson is primarily responsible for implementing business decisions as they pertain to Delta Sonic's 28 car wash locations, including but not limited to

decisions concerning company labor guidelines, budgets, and other financial controls.

84. In April 2010, Ronald Benderson was inducted into the Carwash Hall of Fame and is considered an innovator in the car wash industry by designing and manufacturing his own soap and touch-less tunnel equipment.

85. Ronald Benderson has implemented his personnel management philosophy at Delta Sonic filling leadership positions from within his company. Ronald Benderson is a very hands-on owner of Delta Sonic and uses an open door policy with his employees.

86. For example, Ronald Benderson routinely visits Delta Sonic car wash centers to observe operations and speak to employees about their job duties, and is known to walk around locations randomly rewarding productive employees with gift cards.

87. Based on these facts, Ronald Benderson can be held liable as an employer of Plaintiffs for violations complained of in this matter.

COUNT I
Violation of the New York Labor Law – Minimum Wages
Class Action (Tip Allowance Class)

88. This count arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 et seq., for Defendants' failure to pay Named Plaintiffs, and the class of employees that they seek to represent, all their earned minimum wages. Named Plaintiffs and the class are current and former employees of Defendants who are due, and who have not been paid, minimum wages under the provisions of the NYLL. Plaintiffs bring Count I as a class action under Rule 23.

89. Defendants have a practice of paying Plaintiffs subminimum wages.

90. Defendants failed to record, with each paycheck, as a separate item in Plaintiffs' wage records, the tip allowance they claimed on behalf of the Named Plaintiffs and those similarly situated as required by NYLL and the supporting New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. §142-2.5(b)(1)(iii).

91. Defendants' practices violate the minimum wage provisions of the NYLL.

92. Plaintiffs will seek to certify Count I as a class action, and ask the Court to determine the rights of the class, enjoin the illegal conduct, order the payment of other damages due, and to direct Defendants to account for all back wages, penalties and prejudgment interest thereon due to the Named Plaintiffs and the class that they seek to represent.

93. Count I is brought as a class action because the class members similarly situated to the Named Plaintiffs are so numerous that joinder of all members is impracticable.   Named Plaintiffs therefore bring this action on their own behalf as aggrieved employees, and in their representative capacities, against Defendants.   Named Plaintiffs and similarly-situated persons are equally affected by the minimum wage violations of Defendants, and the relief sought is for the benefit of Named Plaintiffs and the class that Named Plaintiffs seek to represent.

94. The issues involved in this lawsuit present common questions of law and fact.   These common questions of law and fact predominate over the variations which may exist between members of the classes, if any.   The Named Plaintiffs and the class of similarly-situated persons on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely owed minimum wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.   The individual Named Plaintiffs believe and assert that they are able to fairly and adequately represent and protect the interests of the class.   If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals, to the Court, and to Defendants.   Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

95. The books and records of Defendants are material to Plaintiffs' action as they disclose the hours worked by each employee, the rate of pay for that work, any allowances claimed against minimum wages, and any uniform maintenance payments made to employees.

96. Defendants violated the NYLL by failing to compensate Plaintiffs and members of the class consistent with the minimum wage provisions.

WHEREFORE, Plaintiffs and the class pray for judgment against Defendants as follows:

(a) an order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violations;

(b) an award of the value of Plaintiffs' and Class Members' unpaid wages and overtime;

(c) an award crediting Plaintiffs and Class Members for all hours worked;

(d) an additional amount as liquidated damages up to one-hundred percent of the total amount of wages found to be due;

(e) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f) an award of pre- and post-judgment interest;

(g) the amount equal to the value that would make Plaintiffs and Class Members whole for the violations; and

(h) such other and further legal or equitable relief as this Court deems to be just and appropriate.

## COUNT II
### Violation of the NYLL – Uniform Laundry & Maintenance Expenses
### Class Action (Uniform Laundry & Maintenance Class)

97. Plaintiffs hereby reallege and incorporate paragraphs 1 through 96 of this Complaint.

98. This count arises from Defendants' willful violation of the NYLL, New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. §142-2.5(c)(1), for Defendants' failure to pay Named Plaintiffs and the class members that they seek to represent all their unpaid uniform laundering & maintenance expenses. The Named Plaintiffs and the class are current and former employees of Defendants who are due, and who have not been paid for, uniform laundering and maintenance expenses under the provisions of the NYLL. Plaintiffs bring Count II as a class action under Rule 23.

99. Defendants have a practice of requiring Plaintiffs to wear a specific work uniform.

100.      Defendants failed to reimburse the Named Plaintiffs and Class Members for uniform maintenance as required under New York State law.  Specifically, Defendants failed to pay the Named Plaintiffs and class members $8.90 per week, when the employee works more than 30 hours a week; $7.00 per week when the employee works more than 20 but not more than 30 hours a week; and $4.25 per week when the employee works 20 hours or less a week.

101.      Defendants' practices violate the minimum wage provisions of the NYLL.

102.      Plaintiffs will seek to certify Count II as a class action, and ask the Court to determine the rights of the class, enjoin the illegal conduct, order the payment of other damages due, and to direct Defendants to account for all unpaid uniform maintenance and laundering expenses, penalties and prejudgment interest thereon due to the Plaintiff and the class that they seek to represent.

103.      Count II is brought as a class action because the class members similarly situated to the Named Plaintiffs are so numerous that joinder of all members is impracticable. Named Plaintiffs therefore bring this action on their own behalf as aggrieved employees, and in their representative capacities, against Defendants.  Named Plaintiffs and similarly-situated persons are equally affected by the NYLL violations of Defendants, and the relief sought is for the benefit of the Named Plaintiffs and the class that the Named Plaintiffs seek to represent.

104.      The issues involved in this lawsuit present common questions of law and fact.  These common questions of law and fact predominate over the variations which may exist between members of the classes, if any.  The Named Plaintiffs and the class of similarly-situated persons on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely unpaid uniform maintenance and laundry expenses plus

penalties, interest, attorneys' fees and the cost of this lawsuit. The Named Plaintiffs believe and assert that they are able to fairly and adequately represent and protect the interests of the class. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals, to the Court, and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

105.     The books and records of Defendants are material to Plaintiffs' action as they disclose the number of hours worked by each Plaintiff, any allowances claimed against minimum wages, and any uniform maintenance payments made to employees.

106.     Defendants violated the NYLL by failing to pay the Named Plaintiffs and class members for the cost of maintaining and laundering the required uniforms as is required by the NYLL, specifically the New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. §142-2.5(c)(1).

WHEREFORE, Plaintiffs and the class pray for judgment against Defendants as follows:

(a)     an order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violations;

(b)     an award of the value of Plaintiffs' and Class Members' maintenance and laundering of required uniforms as required by 12 N.Y.C.R.R. §142-2.5(c);

(c)     an additional amount as liquidated damages up to one-hundred percent of the total amount of wages found to be due;

(d)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(e)     an award of pre- and post-judgment interest;

(f)     the amount equal to the value which would make Plaintiffs and Class Members whole for the violations; and

(g)     such other and further legal or equitable relief as this Court deems to be just and appropriate .

COUNT III
Violation of the Fair Labor Standards Act – Minimum Wages
Section 216(b) Collective Action

107.      Plaintiffs hereby reallege and incorporate paragraphs 1 through 106 of this Complaint.

108.      This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. §201, *et seq.*, for their failure to pay minimum wages to the Plaintiffs.  Plaintiffs bring this claim as a collective action under Section 16(b) of the Fair Labor Standards Act.  29 U.S.C. §216(b).

109.      Plaintiffs are not exempt from the minimum wage provisions of the FLSA.

110.      Defendants failed to provide notice of the tip credit to Plaintiffs and Class Members as required under federal law.

111.      Defendants' practices violate the minimum wage provisions of the FLSA.

112.      Because the Plaintiffs were all deprived of minimum wage payments by the Defendants' policy, Plaintiffs are similarly situated to each other pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)     judgment in the amount of the owed minimum wages for all time worked by Plaintiffs and those employees who join this lawsuit;

(b)     an injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(c)     liquidated damages in an amount equal to the amount of unpaid minimum wages;

(d)     an award crediting Plaintiffs and Class Members for all hours worked;

(e)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f)     an award of pre- and post-judgment interest; and

(g)     such other and further relief as this Court deems just and proper pursuant to the FLSA.

### JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: December 12, 2014

FERR & MULLIN, P.C.

By: _____
Robert Mullin, Esq.
*Attorney for Plaintiffs*
7635 Main Street Fishers
P.O. Box 440
Fishers, New York 14453
Telephone: (585) 869-0210
rlmullin@ferrmullinlaw.com

CORDELLO LAW PLLC

By: _____
Justin M. Cordello, Esq.
*Attorney for Plaintiffs*
693 East Avenue, Suite 220
Rochester, New York 14607
Telephone: (585) 857-9684
justin@cordellolaw.com