**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESSENCE TAYLOR and DANIEL CASHMAN *on behalf of themselves and all other employees similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> DELTA-SONIC CAR WASH SYSTEMS, INC., and RONALD BENDERSON, <br><br> Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS UNDER NYCRR § 142-2.5(b) AND THE FAIR LABOR STANDARDS ACT** <br><br><br> Civil Action No. 6:14-cv-06698-MAT-JWF |

8541963

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

    A.    Taylor, Cashman, and all the opt-ins were informed of Delta-Sonic's tip
           practices before they started work. ......................................................................... 3

    B.    Cashman and Taylor (and the opt-ins) earned at least the minimum wage
           each week they worked. ........................................................................................... 5

ARGUMENT ............................................................................................................................. 5

I.    Delta-Sonic is entitled to summary judgment on Plaintiffs' New York paystub
    notice claim. ....................................................................................................................... 5

    A.    Section 142-2.5(b)(1)(iii) conditions the tip credit on maintaining "wage
           records," not issuing the employee a paystub subtracting the "tipped" rate
           from the minimum wage. ......................................................................................... 6

    B.    Interpreting the Wage Orders as requiring forfeiture of the tip credit for a
           paystub notice violation would contradict the Wage Theft Prevention Act. ......... 10

    C.    NYLL 652(4) should be read in harmony with NYLL 195 and 198. ..................... 12

    D.    *Hicks* is inapposite and wrong on the law. ............................................................. 13

II.    Delta-Sonic is entitled to summary judgment on Plaintiffs' and all opt-ins' FLSA
    claims. ................................................................................................................................ 14

    A.    Four opt-ins' claims are untimely. ........................................................................ 14

    B.    All Plaintiffs' and opt-ins' FLSA claims fail on the merits. .................................. 14

III.    Even if Plaintiffs could recover the amount of the tip credit as damages on either
    their New York paystub claim or FLSA claim, they cannot recover for any pay
    period in which, disregarding the amount of the tips they claimed, they earned at
    least minimum wage. ........................................................................................................ 17

CONCLUSION ......................................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................. 20

8541963

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Awan v. Durrani,*
2015 WL 4000139 (E.D.N.Y.)................................................................11

*Beer Garden v. N.Y. State Liquor Auth.,*
79 N.Y.2d 266 (1992) ...........................................................................13

*Caci v. Wiz of Lake Grove,*
267 F. Supp.2d 297 (E.D.N.Y. 2003) ....................................................17

*Chen v. Chan,*
2015 WL 4032693 (2d Cir.) ..................................................................11

*Chopen v. Olive Vine, Inc.,*
2015 WL 1514390 (E.D.N.Y.).................................................................16

*E. Paralyzed Veterans Ass'n v. Metro. Transp. Auth.,*
433 N.Y.S.2d 461, 79 A.D.2d 516 (1st Dep't 1980) ................................8

*Grella v. St. Francis Hosp.,*
5 N.Y.S.3d 328 (Nassau Cnty. Nov. 26, 2014).........................................8

*Hart v. Crab Addison, Inc.,*
2014 WL 2865899 (W.D.N.Y.) ...............................................................17

*Hicks v. T.L. Cannon Corp.,*
35 F. Supp.3d 329 (W.D.N.Y 2014) .......................................................13

*In re Application of Mut. Redev. Houses, Inc.,*
720 N.Y.S.2d 7 (1st Dep't 2001) ...........................................................10

*In re Garcia,*
847 N.Y.S.2d 303 (3d Dep't 2007).........................................................11

*In re Malta Town Centre I, Ltd.,*
3 N.Y.3d 563 (2004) .............................................................................12

*Jin v. Pacific Buffet House, Inc.,*
2009 WL 2601995 (E.D.N.Y.)..................................................................7

*Kim v. Kum Gang,*
2015 WL 2222438 (S.D.N.Y.).................................................................16

*Lanzetta v. Florio's Enters.,*
763 F. Supp.2d 615 (S.D.N.Y. 2011)......................................................13

8541963

*Letnz v. Spanky's Restaurant II*,
    491 F. Supp.2d 663 (N.D. Tex. 2007) .........................................................................16

*Lozano v. Rugfrit 1350 LLC*,
    2015 WL 1938754 (N.Y. Cnty.) ................................................................................11

*Nat'l Rest. Ass'n v. Solis*,
    870 F. Supp.2d 42 (D.D.C. 2012) ..............................................................................16

*Paz v. Piedra*,
    2012 WL 121103 (S.D.N.Y.) .....................................................................................13

*Pellon v. Business Representation Int'l, Inc.*,
    528 F. Supp.2d 1306 (S.D. Fla. 2007) .......................................................................17

*Perez v. G & P Auto Wash Inc.*,
    930 F. Supp.2d 423 (E.D.N.Y. 2013) ..........................................................................7

*Perez v. Westchester Foreign Autos, Inc.*,
    2013 WL 749497 (S.D.N.Y.) .....................................................................................17

*Porter v. West Side Restaurant, LLC*,
    2014 WL 1642152 (D. Kan.) .....................................................................................17

*Pruell v. Caritas Christi*,
    2010 WL 3789318 (D. Mass.) ...................................................................................17

*Rangolan v. Cnty. of Nassau*,
    96 N.Y.2d 42 (2001) ....................................................................................................8

*Saunders v. City of New York*,
    594 F. Supp.2d 346 (S.D.N.Y. 2008) ........................................................................14

*Twin State CCS Corp. v. Roberts*,
    125 A.D.2d 18 (3d Dep't 1987) ...................................................................................7

*Two Assocs. v. Brown*,
    513 N.Y.S.2d 966, 127 A.D.2d 173 (1st Dep't 1987) ...............................................13

*U.S. v. Klinghoffer Bros. Realty Corp.*,
    285 F.2d 487 (2d Cir. 1961) .................................................................................17, 18

*Union of Needletraders, Indus. & Textile Emps. v. I.N.S.*,
    202 F. Supp.2d 265 (S.D.N.Y. 2002) ..........................................................................8

*Weiss v. City of N.Y.*,
    95 N.Y.2d 1 (2000) ....................................................................................................13

8541963

*Yan v. 520 Asian Rest. Corp.*,
   2014 WL 7177259 (S.D.N.Y.)................................................................................7

**Statutes**

29 U.S.C. § 203(m) ................................................................................ passim

29 U.S.C. § 255 ................................................................................14

NYLL § 162 ................................................................................11

NYLL § 195 ................................................................................8, 10, 11

NYLL § 198 ................................................................................10, 12

NYLL § 652 ................................................................................6

NYLL § 663 ................................................................................12

**New York Wage Orders**

12 NYCRR § 142-2.5(b) ................................................................ passim

12 NYCRR § 142-2.7 ................................................................8, 10, 13

12 NYCRR § 142-2.9 ................................................................18

12 NYCRR § 146-2.2 ................................................................9

12 NYCRR § 146-2.3 ................................................................9

**Code of Federal Regulations**

29 C.F.R. § 531.59 ................................................................15

76 Fed. Reg. 18832, 18844 (April 5, 2011) ........................................16

**Books and Articles**

Norman Singer, *Statutes & Statutory Construction* § 46.06 (6th ed. 2000) ...................................8

**Internet**

http://www.labor.ny.gov/data-sharing/ui%20data%20sharing%20elements.pdf. .........................8

8541963

## <u>INTRODUCTION</u>

This is not a case of wage theft, or of an employer not paying minimum wage or overtime.  Far from it:  Plaintiffs do not dispute they were actually paid at least minimum wage (and often much more) each week during their employment.  Defendants made sure of that.

Instead, on behalf of a putative class, Plaintiffs want millions of dollars because Defendants ("Delta-Sonic," their former employer) did not state on their pay stubs the difference between the minimum wage and the "tipped rate" it paid for hours worked in car wash positions where they received tips.  Literally, their claim is that the following line did not appear on the paystub: "$8/hour - $6.05/hour = $1.95/hour," even though everyone agrees that *both* the $8/hour (the minimum wage in 2014) and $6.05/hour (the tipped rate then) numbers plainly appeared on the paystub.

According to Plaintiff Daniel Cashman, it wasn't "his job" to subtract the two numbers, even though he was "definitely looking at [his] pay stubs and figuring out what's on them":

> A:    [Delta-Sonic] say[s] you get paid X amount to do this job. Here's the minimum wage.  What's the difference?  I mean, they never explicitly said what that difference in pay would be.
>
> Q:    You can't take $8 minus 6.05 and see that it's $1.95?
>
> A:    That's not my job.
>
> Q:    But that's the basis of your claim, is that … nobody told you that 8 minus 6.05 is $1.95; is that correct?
>
> A:    That's correct.

[Statement of Facts In Support of Mot. for Summ. J. ("SOF"), Ex. 2 at 28:21-29:8.]

Plaintiffs' lawsuit is premised on a fiction that failure to subtract the tipped rate from the minimum wage rate on a paystub results in a forfeiture of an otherwise lawful tip credit.  ***No such remedy exists, nor did it ever exist, under state or federal law.***

The NY Miscellaneous Wage Order (which applies here) does not condition the tip credit on a paystub issued to the employee.  Instead, it expressly conditions taking the tip credit on the employer maintaining "wage records" that show the amount of tips received and the tip credit.

8541963

Delta-Sonic did that.  A "wage record" is not the same thing as a paystub; when the Department of Labor ("DOL") wanted to refer to the paystub issued *to the employee*, it used the term "statement of pay."  So did the Legislature.  And the DOL has never conditioned the tip credit on paystub notice.  That wasn't an oversight, and Plaintiffs cannot treat the Wage Order like a buffet and mix and match its terms at their whim.

Then, in April 2011, the Wage Theft Prevention Act ("WTPA") became law.  It authorized statutory damages (capped per employee) as a remedy—none existed before—for the failure to issue a proper paystub.  In doing so, the Act went further and confirmed that employees could not use any paystub notice requirement to get a windfall:  it created an affirmative defense whereby there was *no liability* for statutory damages if the employer otherwise paid all wages due the employee.  No surprise that Plaintiffs disavow the WTPA completely; if it doesn't end their claim on summary judgment, it certainly makes it uncertifiable as a class action.

*Pre-employment* notice of the tip credit is a different thing, but the result here is the same—Plaintiffs and the 13 federal Fair Labor Standards Act ("FLSA") opt-ins have no claim as a matter of law.  Most of them acknowledged, ***in writing*** and before they started work, that they understood they get to keep all tips they earn, that Delta-Sonic intends to credit those tips toward the minimum wage, that Delta-Sonic will pay them an hourly rate less than the minimum wage when they work in a "tipped" position, and that Delta-Sonic will pay them make-up pay (to reach the minimum wage) if they do not receive enough in tips that week.  Although Delta-Sonic did not require a signed acknowledgment at the time Plaintiff Taylor was hired in 2006, Delta-Sonic trainers covered the very same information at *everyone's* orientation.  And Taylor admitted she knew how tips worked at Delta-Sonic.  Oral notice is sufficient under the FLSA.

Finally, assuming Plaintiffs (or the FLSA opt-ins) are entitled to some relief (which they are not), they cannot recover any damages for any week in which they earned *more than* the minimum wage, not counting tips.  Under state and federal law, compliance with the minimum wage is measured weekly, not daily.

8541963

## BACKGROUND

Delta-Sonic operates car wash facilities at 19 locations in western New York, including in Buffalo, Syracuse, and Rochester.  [SOF ¶ 1.]  Some of the locations also have a detail shop and a lube shop for oil changes.  [*Id.*]

At each facility, Delta-Sonic employs "Delta Techs," who are generally young men and women (often in high school or college) who cover various job positions ranging from power-washing customers' vehicles, programming the car wash computer controls, hand-drying the vehicles, and detailing the interior of vehicles.  [SOF ¶ 2.]  Most employees start as a Delta Tech, and rotate among the various duties during a work day.  [*Id.*]  Delta Techs are generally paid minimum wage at first, and thereafter receive raises based on their performance and hours worked.  [*Id.*]

While performing certain jobs, Delta Techs customarily receive cash tips from customers.  [SOF ¶ 3.]  Delta-Sonic pays a "tipped" rate for hours spent in those jobs, which is below minimum wage.  [SOF ¶ 22.]  These jobs are highly sought after, even for employees who have been at Delta-Sonic for a while and are earning over $10/hour in other jobs, because they can make more money in tipped positions.

**A.**     **Taylor, Cashman, and all the opt-ins were informed of Delta-Sonic's tip practices before they started work.**

New hires at Delta-Sonic go through a two-day orientation during which Trainers instruct employees on, among other things, car washing and detailing, materials handling, Delta-Sonic human resource policies and procedures, safety, and employee pay.  [SOF ¶¶ 21, 22, 23, 27.]  Plaintiffs and every opt-in attended orientation training when they were hired.  [SOF ¶ 22.]  Each of them, except for Taylor,[1] received forms which explained in detail how Delta-Sonic handled tip pay.  [SOF ¶¶ 23, 27.]  For example, Cashman signed a pay sheet acknowledging that he understood the following:

---

[1] There are 14 opt-ins.  Opt-ins Bartoszek and Case also did not sign an acknowledgment form, but they are not proper plaintiffs anyway because they never made below the minimum wage during the FLSA limitations period (not counting tips).  *See infra* at 18.

- "While working any hours in a <u>non-tipped</u> job function, you will be paid an hourly rate of $7.25" (the minimum wage in 2013);

- "When working in a tipped job function, you can be assured that your total average hourly pay rate for those hours worked will be guaranteed to be no less than $7.30 per hour";

- "Your hourly pay will be made up of a base pay rate of $5.50 per hour plus tips";

- "At the completion of your work shift, you are required to claim how much money you made in tips that day.  If you worked in a non-tipped position or you did not make any tips that day you still need to put "0" in the block for that day";

- "If you did not make enough in tips while working in a tipped position to ensure you total pay (base pay and tips) comes to $7.30, we will add in the difference to make sure we meet the guarantee of $7.30"; and

- "Allowances taken" by Delta-Sonic included tips he received.

[SOF ¶¶ 23, 27.]  The pay sheets also illustrated how the tip credit would work for a hypothetical employee who did not make enough money in tips to reach minimum wage and thus received "makeup pay."  [SOF ¶ 23.][2]  Taylor had access to this same written information because Delta-Sonic posted the pay sheet near the time clock in the employee break room at her facility. [SOF ¶ 26.]

Delta-Sonic's Trainers verbally covered the same information (and more) in their presentations, explaining that Delta Techs get to keep all the tips they earn, that they have to report the amount of tips they receive—no more, no less—and that Delta-Sonic would count their tips as part of their pay when in a "tipped" position.  [SOF ¶¶ 22, 24, 25.]  Indeed, during orientation, Trainers often read aloud the pay form, *word for word.*  [SOF ¶ 28.]

---

[2] Although from time to time Delta-Sonic revised its pay sheets, the tip terms discussed above remained substantively identical.  [SOF ¶¶ 23, 27.]

**B.     Cashman and Taylor (and the opt-ins) earned at least the minimum wage each week they worked.**

Delta-Sonic provided its employees with weekly paystubs that showed the amount of hours each of them worked in a tipped position, the rate of pay for those hours (the "tipped" rate), the number of hours they worked in a non-tipped position, the rate of pay for those hours (i.e., at minimum wage or higher), gross pay, gross tips collected that week, and taxes withheld.  [SOF ¶ 32.]  Although voluminous, for the Court's convenience, Delta-Sonic has submitted into evidence all paystubs for Taylor, Cashman, and the 14 FLSA opt-ins, in chronological order.[3]

Throughout their employment, the time Taylor and Cashman (and the opt-ins) spent in a "tipped" position varied from week to week.  Depending on the volume of business at the car wash, Taylor and Cashman earned as much as $80 in tips during a six-hour shift.  [SOF ¶ 3.]

Taylor and Cashman  do not dispute that, at the end of each week of their employment, they went home with at least minimum wage for the hours worked.  [SOF ¶ 22; *id*. ¶ 24.]  In fact, for many weeks, they earned far more than the minimum wage.  [SOF ¶¶ 32-35.]   And neither alleges unpaid overtime or commissions.  [SOF Ex. 2, Cashman Dep. 29:12-30:2; Ex. 3, Taylor Dep. 19:16-20:13.]  As Cashman put it, he has "[r]eceived proper pay."  [SOF Ex. 2, at 68:7-19.]

## ARGUMENT

**I.     Delta-Sonic is entitled to summary judgment on Plaintiffs' New York paystub notice claim.**

Taylor's and Cashman's paystub claims under NYCRR § 142-2.5(b) fail as a matter of law because neither the Miscellaneous Wage Order nor the WTPA condition taking the tip credit on subtracting the "tipped" rate from the minimum wage on each and every paystub.[4]

---

[3] Plaintiffs submitted paystubs in bates number order with their class certification motion. [Dkt. 36-1 to 38-1.]

[4] The opt-ins are not plaintiffs for purposes of the paystub claim under New York law.

8541963

**A.   Section 142-2.5(b)(1)(iii) conditions the tip credit on maintaining "wage records," not issuing the employee a paystub subtracting the "tipped" rate from the minimum wage.**

Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage.   29 U.S.C. § 203(m); NYLL § 652.   Additionally, in New York, § 142-2.5(b) of the Miscellaneous Wage Order provides that "[t]ips, or gratuities, may be considered a part of the minimum wage, *subject to the following conditions*:

> (i)    the particular occupation in which the employee is engaged is one in which tips have customarily and usually constituted a part of the employee's remuneration;
>
> (ii)   substantial evidence is provided that the employee received in tips at least the amount of the allowance claimed …; and
>
> (iii)  the allowance claimed by the employer is recorded on a weekly basis as a separate item in the ***wage record***.

(Emphasis added.)   Taylor and Cashman do not dispute that the first two requirements are met; indeed, as to (ii), Delta-Sonic produced records from each week in the relevant time period on which Taylor and Cashman recorded their tips on a daily basis.[5]   [SOF ¶ 25; SOF Ex. 1, Evers Decl. ¶ 10 & Ex. D.]

As for § 142-2.5(b)(1)(iii), Delta-Sonic, like other employers, also maintains detailed, weekly payroll records.   Delta Sonic's records show, for both Taylor and Cashman (and all its employees), their job code, location, pay date, gross amount earned less tips and overtime, the number of non-overtime hours worked, the minimum wage rate, and the difference between the minimum wage rate and the average pay rate for that week (gross earnings, minus tips and overtime, divided by regular hours worked).   [SOF ¶ 33.]

---

[5]   The Wage Order says that "[a]n example of substantial evidence is a statement signed by the employee that he actually received in tips the amount of the allowance claimed."

8541963

Taylor and Cashman do not allege that Delta-Sonic's payroll records were deficient in any way. Instead, they erroneously assume that the term "wage record" in § 142-2.5(b)(1)(iii) means the weekly paystubs *they* received. Wage records, however, are what the employer maintains for *its* use,[6] not what it gives its employees to explain their weekly pay and deductions.

Thus, in *Perez v. G & P Auto Wash Inc.*, 930 F. Supp. 2d 423 (E.D.N.Y. 2013), the court held that the employer complied with § 142-2.5(b)(1)(iii) because "the tip allowance was recorded on the ***employer's*** weekly schedule. *Id.* at 435 (emphasis added). As for notice to the *employee*, the court in *Perez* explained that "§ 142–2.5 does *not* contain any particular notice provisions with respect to the employer's use of tip credits." *Id.* (emphasis added); *see also Jin v. Pacific Buffet House, Inc.*, 2009 WL 2601995, at *4 (E.D.N.Y. 2009) (noting that § 142-2.5 is a "recordkeeping requirement" and that there is no liability under NYLL where tipped rate plus tips received equaled or exceeded minimum wage). Put simply, "New York's Minimum Wage Order in effect prior to … [2011] did not require an employer to give an employee notice, *as a condition for taking a tip credit*." *Yan v. 520 Asian Rest. Corp.*, 2014 WL 7177259, at *10 (S.D.N.Y.) (emphasis added).

When the DOL wanted to refer to an *employee's* paystub, it used the term "statement of pay," which it did repeatedly in the Miscellaneous Wage Order. For example, § 142-2.7 specifies that employers are to provide a "statement of pay," but it does ***not*** condition taking the tip credit on the disclosure of any particular information on that statement. It provides:

> Every employer covered by this Part shall furnish to each
> employee a statement with every payment of wages, listing hours
> worked, rates paid, gross wages, allowances, if any, claimed as

---

[6] One purpose of the "wage record" requirement is so the NY DOL can audit employers. *E.g.*, *Twin State CCS Corp. v. Roberts*, 125 A.D.2d 18, 19 (3d Dep't 1987).

8541963

part of the minimum wage, deductions, and net wages.[7]

Section 142-2.7 stands in stark contrast to section 142-2.5(b)(1)(iii), which expressly conditions taking the tip credit—it says "*subject to* the following conditions"—on the employer keeping a "wage record."  There is no mention of a "statement of pay" in § 142-2.5(b)(1)(iii).

Even the Legislature differentiates between "wage record" and "statement of pay."[8] NYLL § 195(4) "imposes on employers a burden of keeping accurate *wage records*," *Grella v. St. Francis Hosp.*, 5 N.Y.S.3d 328 (Nassau Cnty. Nov. 26, 2014) (emphasis added), while § 195(3), which appears immediately above § 195(4), requires an employer to furnish each employee with a "*statement of pay*."  NYLL § 195.

Plaintiffs cannot inject into one section of the Wage Order language specifically omitted by the DOL in another.  "It is a general rule of construction that omissions in a statute, where the act is clear and explicit in its language, cannot be supplied by … [what] [a] court … thinks should have been put there by the lawmakers."  *E. Paralyzed Veterans Ass'n v. Metro. Transp. Auth.*, 433 N.Y.S.2d 461, 79 A.D.2d 516, 517 (1st Dep't 1980).  Instead, where different terms are used in the same law, "courts may reasonably infer that different concepts are intended."  *Rangolan v. Cnty. of Nassau*, 96 N.Y.2d 42, 47 (2001). "[U]se of different terms within related statutes generally implies that different meanings were intended."  2A Norman Singer, *Statutes & Statutory Construction* § 46.06 (6th ed. 2000); *see Union of Needletraders, Indus. & Textile Emps. v. I.N.S.*, 202 F. Supp.2d 265, 271 (S.D.N.Y. 2002)

---

[7] Delta-Sonic complied with § 142-2.7 as well, although Plaintiffs' claim is not brought under that regulation.  [Dkt. 1, ¶¶ 3, 88-91.]  Regardless, the remedy they seek is not available under the Wage Order or NYLL, for the reasons explained herein.

[8] In a related context, for purposes of unemployment benefits, the "wage record" is quarterly earnings information the employer submits, which is shared with the NY DOL to administer the State's UI program.  *See* http://www.labor.ny.gov/data-sharing/ui%20data%20sharing%20elements.pdf.

8541963

("[E]very choice of words is purposeful … and th[e] statutory use of different terms evinces intent to express different meanings.").

The DOL's 2011 amendments to the Hospitality Wage Order ("HWO"), which governs food service and hotel workers, confirm that the DOL did not intend to condition the taking of the tip credit on an employer subtracting the tipped rate from the minimum wage on each paystub.  The HWO expressly conditions taking the tip credit on notifying the employee of the tip credit "as required in section 146-2.2 of this Part," which in turn requires an employer to provide **pre-employment** notice of the tip credit:

> Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly rate of pay, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.

NYCRR § 146-2.2.  There is nothing about showing simple subtraction of two numbers on the paystub.  In fact, right below HWO § 146-2.2 is § 146-2.3, which (like the Miscellaneous Wage Order) provides that "[e]very employer shall provide to each employee *a statement*, commonly referred to as a pay stub, with every payment of wages … list[ing] credits claimed (for tips, meals and lodging) if any."  But there is no conditional language there.  If it wanted to, the DOL could have easily conditioned the tip credit on a line item appearing on the paystub.  But it chose not to do that, in either the Hospitality or Miscellaneous Wage Order.  And it would make no sense if employers subject to the Miscellaneous Wage Order were subject to draconian penalties for failing to issue a paystub with a line subtracting two numbers while the entire food service and hotel industry in New York was exempt.

Even Plaintiffs' Complaint appears to concede that a "wage record" is not the same thing as a paystub.  In Paragraph 14, which contains their proposed class definition for the pay stub claim, they assert that Delta-Sonic employees "did not receive a wage record, with each paycheck, that included the tip allowance."  This is not just semantics—a wage record belongs to the *employer*; a pay statement goes to the *employee*.

- 9 -

Plaintiffs have no authority to rewrite § 142-2.5(b)(1)(iii). It says what it says, and must be applied as written. *See, e.g.*, *In re Application of Mut. Redev. Houses, Inc.*, 720 N.Y.S.2d 7, 8 (1st Dep't 2001) (rejecting interpretation "irreconcilable with the plain meaning of the governing regulation"). Plaintiffs have no claim under the Miscellaneous Wage Order.

> **B.      Interpreting the Wage Orders as requiring forfeiture of the tip credit for a paystub notice violation would contradict the Wage Theft Prevention Act.**

In the WTPA, the Legislature made clear that an employer does not forfeit an otherwise lawful tip credit altogether for failing to subtract the tipped rate from the minimum wage on a paystub. Section 195(3) of the WTPA, which became law on April 9, 2011, provides that an employer shall:

> furnish each employee with a *statement* with every *payment of wages*, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; *allowances, if any, claimed as part of the minimum wage*; and net wages.

(Emphasis added.)   Thus, § 195(3) expounded on the requirements in § 142-2.7 of the Miscellaneous Wage Order regarding what information must appear on the paystub. *See supra* at 7. Still, neither has any conditional language regarding the tip credit.

Moreover, with the WTPA, the Legislature included—*for the first time*—statutory damages as an enforcement mechanism:  NYLL § 198(1-d) provides that if any employee is not provided a statement as required by § 195(3), he or she "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorneys' fees."

But the Legislature specified that damages are capped and otherwise *unavailable* if there was no prejudice to the employee: § 198(1-d) goes on to say that statutory damages are recoverable *only if* the employee was actually underpaid, i.e., no recovery "if the employer

8541963

made complete and timely payment of all wages due … the employee who was not provided statements as required by [195(3)].” ***In other words, a paystub notice violation alone cannot result in an underpayment***.  As the court in *Lozano v. Rugfrit 1350 LLC*, 2015 WL 1938754 (N.Y. Cnty.) explained, “even if defendants somehow left a box unchecked or engaged in another trivial mistake, plaintiff was not harmed by this and was fully paid.” *Id.* at **4, 6.  In fact, the plaintiff in *Lozano* claimed, just as Plaintiffs do here, that his paystub “does not clearly state the amount of tip credit allowance claim[ed] as part of the minimum wage.” *Id.* at *1.

Pre-WTPA, there was no remedy for what Plaintiff allege here.  *Chen v. Chan*, 2015 WL 4032693, at *3 (2d Cir.) (“[C]ourts have held that, prior to a series of amendments in 2011, New York’s regulations required no such notice as a prerequisite to claiming a tip allowance.”).  This is not surprising in the least; there are many regulatory requirements that do not entail a private right of action.  *See, e.g.*, *Awan v. Durrani*, 2015 WL 4000139, at n.12 (E.D.N.Y.) (“while Article 5 of the [NYLL], section 162, affords an unpaid meal period, there is no private right of action to enforce this provision” (quotations omitted)).[9]

In passing the WTPA, the Legislature “[p]rovided … a private right of action in cases where an employer fails to provide disclosures of wage rates or paystubs (as required under Section 195).”  [Tab A (6/29/10 New York State Senate report.]  Contrast that amendment with the amendments to a separate prohibition on retaliation, where the Legislature explained that it was “[p]rovid[ing] for statutory damages, in addition to existing remedies of up to $10,000 for instances of retaliation.”  [*Id.*]  In other words, the Legislature knew that, when it came to deficient notice on paystubs, there was no existing remedy to which it was adding a new private right of action.

---

[9] Of course, an employer’s failure to keep the requisite records could have evidentiary consequences in an employee’s suit for unpaid compensation.  *E.g.*, *In re Garcia*, 847 N.Y.S.2d 303, 305 (3d Dep’t 2007) (failure to maintain proper wage records put burden on employer to demonstrate unreasonableness of DOL’s calculations).

8541963

**C.     NYLL 652(4) should be read in harmony with NYLL 195 and 198.**

Plaintiffs' answer to all this authority is to avoid it.  They say their claim is under the NYLL's Minimum Wage Act, which provides for a civil action if an employee is paid "less than the wage to which he is entitled," and thus their remedy is not limited by NYLL 195 and 198.  That argument is meritless.

First, their claim isn't really under the MWA.  Section 663 of the MWA, which authorizes civil actions by an employee, provides that "[i]f any employee is paid … less than the wage to which he or she is entitled under the provisions of *this article,* he or she shall recover … the amount of any such underpayments."  NYLL § 663(1) (emphasis added).  *This* article refers to Article 19 (the MWA), which does *not* contain the paystub notice provisions.  Instead, those provisions are found in Article 19 ("Payment of Wages"), which includes §§ 195 and 198 and their (capped) statutory damages.

Second, allowing Plaintiffs to fabricate a claim under Article 6 (MWA) for paystub notices under Article 19 (WTPA) contradicts the plain language and intent of the WTPA.  Plaintiffs will claim that the WTPA's affirmative defense (NYLL § 198) is not available to Delta-Sonic because it did not pay the minimum wage (which, in fact, it did); that is, they will create a fiction that Delta-Sonic paid below minimum wage because it must be (retroactively) stripped of the tip credit for its failure to subtract the tipped rate from the minimum wage on each paystub.  But if that were true, employers which issued paystubs without doing that simple math—and there are thousands of such employers in New York—could never avail itself of the WTPA's affirmative defense, contrary to the Legislature's intent:  the WTPA says that in "***any action***" for a violation of the paystub requirements, the employer can avoid statutory damages by showing it paid all sums due.  *See In re Malta Town Centre I, Ltd*., 3 N.Y.3d 563, 567 (2004) ("[W]e turn first to the plain language of the statutes as the best evidence of legislative intent").  If Plaintiffs want to sue over paystub notices, they have to proceed under the statute that provides the remedy.  They didn't.

- 12 -

Third, § 142-2.7 of the Miscellaneous Wage Order, which requirements are subsumed by NYLL 195(3), cannot authorize a remedy that conflicts with what the Legislature has provided. Agencies "can only promulgate rules to further the implementation of the law *as it exists*; they have no authority to create a rule out of harmony with the statute." *Two Assocs. v. Brown*, 513 N.Y.S.2d 966, 127 A.D.2d 173, 183-84 (1st Dep't 1987) ("agency may not make a unilateral ruling that is at variance with the legislative enactment"). If an agency regulation is "out of harmony" with an applicable statute, the statute must prevail. *Weiss v. City of N.Y.*, 95 N.Y.2d 1, 5 (2000). Thus, "[e]ven when broad rule-making authority has been granted, an agency cannot promulgate rules in contravention of the will of the Legislature." *Beer Garden v. N.Y. State Liquor Auth.*, 79 N.Y.2d 266, 277 (1992) (quotations omitted).

Nothing in the Wage Order authorizes forfeiture of the tip credit simply because an employer failed to subtract two hourly rates on a pay stub. And the WTPA confirms that.

### D.   *Hicks* is inapposite and wrong on the law.

Taylor and Cashman will point to *Hicks v. T.L. Cannon Corp.*, 35 F. Supp.3d 329 (W.D.N.Y 2014), but that case should not be followed here. In *Hicks*, the court denied an employer summary judgment on employees' claim that they were not properly notified of the tip credit.

First, *Hicks* dealt with the Hospitality Wage Order, not the Miscellaneous Wage Order. The latter requires the employer's maintenance of "wage records" as a condition to taking the tip credit, not "statements of pay."

Second, *Hicks*' conclusion that the WTPA remedies do not apply in the context of listing the tip credit on a pay stub is unsupported by any cite to a statute or regulation. 35 F. Supp.3d at 345. *Hicks* cites two other federal district court cases to support that conclusion, but both dealt with failure to give *pre-employment* notice of an employer's tip credit practice under the FLSA and the Hospitality Wage Order, *Lanzetta v. Florio's Enters.*, 763 F. Supp.2d 615, 623-24 (S.D.N.Y. 2011); *Paz v. Piedra*, 2012 WL 121103, at *9 (S.D.N.Y.). Pre-

employment notice has nothing to do with Plaintiffs' paystub claim. Summary judgment is proper on Plaintiffs' paystub claim.

## II. Delta-Sonic is entitled to summary judgment on Plaintiffs' and all opt-ins' FLSA claims.

### A. Four opt-ins' claims are untimely.

None of the Plaintiffs and opt-ins can recover under the FLSA. First, two of them assert claims that are time-barred. Taylor and Cashman filed this action on December 15, 2014. [Dkt. 1.] Opt-ins Banks, Bilotta, Case, and Tillinghast all left their employment at Delta-Sonic before December 15, 2012. [SOF ¶¶ 7, 9, 10, 19.] Because the FLSA statute of limitations is two years, 29 U.S.C. § 255, those four individuals are barred from any recovery.

Although the applicable limitations period is three years for "willful" FLSA violations, that does not help those four individuals. In light of all the steps Delta-Sonic took to ensure its employees knew about its tip credit practices (*supra* at 3-5), there is no way they can show that Delta Sonic either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]" (even assuming it was prohibited). *See, e.g.*, *Saunders v. City of New York*, 594 F. Supp.2d 346, 358-359 (S.D.N.Y. 2008) (negligence will not suffice to extend FLSA limitations period to three years).

### B. All Plaintiffs' and opt-ins' FLSA claims fail on the merits.

As for the remaining Plaintiffs and opt-ins (and even the time-barred claims of Banks, Bilotta, Case, and Tillinghast), they were *all* properly informed of Delta-Sonic's tip credit practices before they began working, precluding any FLSA claim as a matter of law.[10] The FLSA permits Delta-Sonic to take a tip credit against the wages of its employees, so long as it "informs" them it will be doing so. 29 U.S.C. § 203(m). The tip credit is also conditioned on the employee retaining all tips he receives, unless there is a valid tip pooling arrangement. *Id.*

---

[10] Their FLSA claim seeks the same damages that Plaintiffs allege on their New York paystub claim. [SOF Ex. 2, Cashman Dep. 26:15-22; Ex. 3, Taylor Dep. 76:19-77:12.]

In 2011, the U.S. DOL clarified the information an employer must provide:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.:
>
> [1] The amount of the cash wage that is to be paid to the tipped employee by the employer;
>
> [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee;
>
> [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and
>
> [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59.  Delta-Sonic met all those requirements.

During their orientations, Delta-Sonic informed Taylor, Cashman, and each opt-in of its intent to use a tip credit to meet its minimum wage obligations, and precisely how that would be done.  [SOF ¶¶ 21-24, 27-28.]  Delta-Sonic disclosed, both verbally and in writing, that: (i) they will earn a specific, numerical base pay ("tipped wage rate"), an amount below the minimum wage (items 1 & 2 above); (ii) they would make tips and were to report on a daily basis the exact amount of tips they received, even if it was $0 (item 2); (iii) they got to keep their tips except when they wiped cars in tandem, in which case they split tips with the other wiper (item 3); and (iv) if they did not make enough in tips to bring them to or above the required hourly minimum wage, Delta-Sonic paid them guarantee pay (again, item 2).

And each and every Plaintiff and opt-in (other than Taylor and two opt-ins who have no claim, *supra* at 18) signed a pay sheet, acknowledging that Delta-Sonic had explained its tip credit practices.  [SOF ¶¶ 23, 27.]  And all this was done ***before*** a tip credit was ever taken on any of their paychecks.  Thus, item (4) above was clearly met as well.

- 15 -

Although Taylor did not sign an acknowledgment form, her notice was more than sufficient.  *See, e.g.*, 76 Fed. Reg. 18832, 18844 (April 5, 2011) (refusing to require employers to notify employees of tip credit provisions in writing); *Letnz v. Spanky's Restaurant II*, 491 F.Supp.2d 663 (N.D. Tex. 2007) (oral notice of FLSA's requirements sufficient).   Like Cashman and the opt-ins, she attended an orientation where the Trainer covered all that same information.  [SOF ¶¶ 21-22.]  Delta-Sonic also conspicuously posted a Department of Labor-issued FLSA poster, which listed the current hourly minimum wage and contained a section "Tip Credit," which read in relevant part:

> Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation.  If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference.

[SOF ¶ 29.]  This poster was in the employee break room at every Delta-Sonic location, including where Taylor worked.  [SOF ¶ 29.]  Finally, at her deposition, Taylor admitted that she knew she "got to keep all of [her] tips," that she was aware of the minimum wage rate, that she "always knew" that any position that she held where she made tips she got paid "less than minimum wage," and that "although [she was] being paid less than minimum wage, [she] would make up for it in tips."  [SOF ¶ 24.]

Indeed, instead of only informing Plaintiffs and opt-ins of its tip credit practice, Delta-Sonic *explained* it to them, over and above what the law required.  *E.g.*, *Kim v. Kum Gang*, 2015 WL 2222438 (S.D.N.Y.) (employer not required to "explain" tip credit to employees; it need only "inform [them] of the statutory requirements governing tip credits"); *Chopen v. Olive Vine, Inc.*, 2015 WL 1514390 (E.D.N.Y.) (to be eligible to claim tip credit, "employer must first notify the employees of its intention to include tip income when calculating wages actually paid"); *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp.2d 42, 59 (D.D.C. 2012) (FLSA simply requires employer "to 'inform' employees of the law's requirements").   Courts have even found that posters and co-worker conversations satisfy the FLSA's notice requirements.  *E.g.*,

- 16 -

*Porter v. West Side Restaurant, LLC*, 2014 WL 1642152, at *9 (D. Kan.) (oral information "conveyed through a co-worker" sufficient); *Pellon v. Business Representation Int'l, Inc*., 528 F. Supp.2d 1306, 1310-11 (S.D. Fla. 2007) (sufficient to display FLSA poster and orally notify employees they would be paid $2.13 an hour plus tips).

The FLSA certainly does not require an employer otherwise in compliance with its notice provisions to go through the process of subtracting the tipped rate from the minimum wage rate, where the employees already know both rates and when they apply.  Informing is the standard, not giving a math tutorial.

**III.    Even if Plaintiffs could recover the amount of the tip credit as damages on either their New York paystub claim or FLSA claim, they cannot recover for any pay period in which, disregarding the amount of the tips they claimed, they earned at least minimum wage.**

Whichever claims go forward (and neither the New York paystub or FLSA claim should), neither Taylor nor Cashman, nor any opt-in, can recover for any pay period in which their total pay for that week, minus any tips they reported, equals an hourly rate *equal to or greater* than the minimum wage.

"[M]inimum wage claims are based on the plaintiff's pay for a particular week."  *Hart v. Crab Addison, Inc*., 2014 WL 2865899, at *11 (W.D.N.Y.) ("the workweek is the applicable time period for calculating the minimum wage"); *see also Perez v. Westchester Foreign Autos, Inc*., 2013 WL 749497, at *10 (S.D.N.Y.) (same).  "Under what has become known as the *Klinghoffer* rule … no minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage."  *Pruell v. Caritas Christi*, 2010 WL 3789318, at *2 (D. Mass.) (citing *U.S. v. Klinghoffer Bros. Realty Corp*., 285 F.2d 487 (2d Cir. 1961) ("If the total wage paid to each [employee … during any given week is divided by the total time he worked that week, the resulting average hourly wage exceeds [the minimum wage]).")); *see also Caci v. Wiz of Lake Grove*, 267 F. Supp.2d 297, 301 (E.D.N.Y. 2003) (no minimum wage

8541963

violation where employee's "weekly pay divided by the total hours he worked … yielded an hourly rate exceeding the required minimum wage" (citing *Klinghoffer*)).[11]

The very Wage Order on which Plaintiffs base their claim provides that "[t]he minimum and overtime wage provided by this Part shall be required *for each week of work*." NYCRR § 142-2.9 (emphasis added). Thus, as the DOL has explained, "the basis for the minimum … wage payment required by the Miscellaneous Wage Order shall be weekly." [Tab C (12/2/09 Opinion Ltr.]

Here, based on a review of their pay records (which were produced in this case), Cashman earned more than the state minimum wage (without counting his tips) in 17 of the 40 weeks in which he was employed at Delta-Sonic; he made more than the federal minimum wage in 29 of 40 weeks. [SOF ¶ 34.] For her part, Taylor made more than the federal and state minimum wage—again, excluding her tips—in 179 of the 191 weeks in which she worked for Delta-Sonic. [SOF ¶ 35.] That is because Taylor and Cashman did not work in a "tipped" position a lot of the time; instead, they worked in non-tipped positions which paid more than the minimum wage. [SOF ¶¶ 32, 34-35.]

In fact, Delta-Sonic paid opt-ins Case and Bartoszek more than the applicable federal minimum wage during every week of their employment, not counting any tips they reported. [SOF ¶¶ 36-37.] They have no FLSA claim as a matter of law.

That same analysis also applies to a large portion of all of the remaining opt-in's FLSA claims. Many opt-ins worked in position earning above the minimum wage. All combined, the remaining opt-ins worked a total of 201 weeks from December 15, 2012 to the present.

---

[11] Thus, the determination of whether an individual was paid more than the applicable minimum wage is calculated as follows:  if (1) the number of regular (non-overtime) hours worked by the individual in a specific week, (2) multiplied by the applicable New York/federal minimum wage, (3) is less than or equal to the amount Delta-Sonic paid him or her that week (excluding overtime pay and tips), then (4) Delta-Sonic paid that individual at least the New York/federal minimum wage for that week.

8541963

[SOF ¶¶ 34-38.]  In more than half of those weeks, Delta-Sonic—again, excluding their tips—paid them above the federal minimum wage.  [*Id*.]

Any weeks in which any Plaintiff or opt-in earned more than the minimum wage, calculated by dividing their total pay by their total hours for the week, cannot be included in any award of damages on the New York paystub claim or the FLSA claim.  Summary judgment for those pay weeks should be granted to Delta-Sonic.

## CONCLUSION

This Court should grant summary judgment to Delta-Sonic on Plaintiffs' pay stub claim under New York law and their (and the opt-ins') FLSA claims.  In the alternative, this Court should grant summary judgment to Delta-Sonic on both those claims to the extent that Plaintiffs (and the opt-ins) earned at least the applicable minimum wage for particular pay periods.

DATED this 14th day of July, 2015.

STEPTOE & JOHNSON LLP


By  s/ Douglas D. Janicik
    Steven D. Wheeless
    Lawrence Allen Katz
    Douglas D. Janicik
    Erin Norris Bass
    *All Admitted Pro Hac Vice*
    201 E. Washington St., Suite 1600
    Phoenix, AZ 85004
    (602) 257-5211
    djanicik@steptoe.com

BOND SCHOENECK & KING

    Sharon Porcellio
    Key Center, 40 Fountain Plaza, Suite 600
    Buffalo, NY 14202-2200

Attorneys for Defendants

8541963

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Justin M. Cordello
CORDELLO LAW PLLC
693 East Avenue
Suite 220
Rochester, NY 14607
(585) 857-9684
justin@cordellolaw.com

Robert L. Mullin
FERR & MULLIN
7635 Main Street Fishers
P.O. Box 440
Fishers, NY 14453
(585) 869-0210
rlmullin@ferrmullinlaw.com

Attorneys for Plaintiffs


Jackie Lynn Bell
Legal Assistant


Copy of the foregoing sent
via Federal Express this
14th day of July, 2015, to:

Honorable Michael A. Telesca
United States District Judge
100 State Street
Rochester, New York  14614


Jackie Lynn Bell
Jackie Lynn Bell, Legal Assistant

8541963

**TAB  A**

# NEW YORK STATE SENATE
## INTRODUCER'S MEMORANDUM IN SUPPORT
### submitted in accordance with Senate Rule VI. Sec 1

BILL NUMBER: S8380                     REVISED 06/29/10

SPONSOR: SAVINO

TITLE OF BILL:
An act to amend the labor law, in relation to establishing the wage theft prevention act

PURPOSE OR GENERAL IDEA OF BILL:
The Wage Theft Prevention Act (WTPA) seeks to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein.

SUMMARY OF SPECIFIC PROVISIONS:

§ 3 (Labor Law Art. 6, § 195) Notice and Record-Keeping Requirements

Pre-Employment Notice of Wage Rates:

* Sets out the information that must be included in the disclosure of wage rate notice currently required by § 195. Clarifies that employer must disclose intent to claim allowances (like tip or meal allowances) as part of the minimum wage. Clarifies that employer must state basis of wage payment (whether paying by hour, shift, day, week, piece, etc.).
* New requirements: disclosure of employer's "doing business as" names; updates of disclosure annually and within 7 days of a change if the change is not listed on pay stubs.
* Requires employers to provide translated notices provided by the Department of Labor (DOL). Requires DOL to create dual-language template notices in English and additional languages that the DOL, in its discretion, can select. Requires employee to affirm that the employee has accurately told the employer his or her primary language.

Payroll and Paystub Requirements:

* Amends statutory payroll record and paystub requirements to include information currently required pursuant to regulation.
* Amends statute to require employers to maintain copies of payroll records for six years (as is currently required by regulation).

§ 4 (Labor Law Art. 6, § 196) Power of Commissioner

* Provides Commissioner discretion to require employer to provide accounting of all assets upon employer default on administrative order to pay wages, damages, and penalties. Provides civil penalty of up to $10,000 if employer fails to provide and commissioner must go to court to obtain compliance.
* Provides Commissioner discretion to require employer to post bond after default on order to comply (not after ministerial step of docket-

ing administrative order in court, as is currently required).

§ 5 (Labor Law Art. 6, § 196-a) Complaints by Employees to Commissioner

* Codifies existing DOL policy of maintaining confidential the identity of employees who are subject of investigation as long as possible.
* Codifies existing DOL policy of investigating third-party complaints of violations.

§ 6 (Labor Law Art. 6, § 197) Civil penalty

* Closes loophole and provides that Commissioner can take administrative action (not just court action) to collect civil penalty for employer discrimination in pay rates because of sex.

§ 7 (Labor Law Art. 6, § 19S) Costs, Remedies for Payment of Wages Claims.

Liquidated Damages:

o Increases liquidated damages on unpaid wages from 25% to 100% in court action.
o Provides commissioner discretion to assess up to 100% liquidated damages in early investigation stages, prior to issuance of an order to comply.

Employer Violations of Wage Stub and Notice Requirements

o Provides statutory damages and a private right of action in cases where an employer fails to provide disclosures of wage rates or pays tubs (as required under Section 195). Caps statutory damages available for employees at $2,500. provides two affirmative defenses for employer where the employer demonstrates that it:
(1) paid all wages legally required: or (2) had a good faith, reasonable basis for not providing notice or wage stubs.

Facilitating collection of wages Ordered to Be paid:

o Provides that where employer defaults on paying judgment for more than 90 days, after the judgment is final, the employer must pay an additional 15% additional damages to defray approximately half of the cost to the employee of collecting on the judgment.

Other Changes:

o Tolls the statute of limitations during investigations by the Commissioner.

§ 8 (Labor Law Art. G, § 19B-a) Criminal Penalties for Nonpayment of Wages

* Adds newer business forms (partnerships, limited liability corporations) to the list of types of employers covered under this provision.

§ 9 (Labor Law Art. G, § 199-a) Notification of DOL Process

Codifies the DOL's current practice of accepting for investigation complaints for violations of meal breaks, days of rest, and retaliation and requires that employee representatives who receive communications from the DOL must be duly authorized by the employee.

§ 10 (Labor Law Art. 7, § 215) Prohibited Retaliation

Closes loopholes on what actions constitute prohibited retaliation:

o Explicitly prohibits threats of retaliation.

o Prohibits retaliation by persons who do not meet technical definition of "employer" under the statute but who an employee can prove retaliated against him or her because he or she engaged in protected conduct under the Labor Law.
o protects an employee from retaliation where the employee makes a complaint about conduct that the employee reasonably and in good faith believes constitutes a violation under the Labor Law.
o Clarifies that two-year statute of limitations for filing retaliation claim runs from the date of the retaliation itself, not the dates of the employee's employment.

Provides Commissioner authority commensurate with the court to remedy retaliation

o Amends statute to explicitly provide commissioner with all necessary tools, including ordering reinstatement, for remedying retaliation – makes Commissioner's power parallel to those of a court.

Provides deterrence against violations

Provides for statutory damages, in addition to existing remedies of up to $10,000 for instances of retaliation.

o Explicitly provides that the sole remedy available against a person who is now an employer is statutory damages of up to $10,000 (not rein-statement, lost wages, front pay, etc).

§ 11 (Labor Law Art. 7, § 218) and § 12 (Labor Law Art. 7 § 219) orders to Comply

<u>same changes in both provisions</u>

* Provides that the full 100% liquidated damages amount be assessed if an employer refuses to settle a claim and forces the Commissioner to issue an order to comply.
* Provides the Commissioner discretion to add an additional 15% damage that comes due if the employer defaults on an order to comply for more than 90 days.
* Requires the commissioner to provide a copy of an order to comply issued against an employer to complaining employee (any employee who submitted an actual complaint form with the DOL but not every employee covered in an investigation).
* To facilitate collections, provides the Commissioner discretion to assign to an employee the amount of wages, wages supplements, interest, and liquidated damages due that employee under an order to comply and file in the name of that employee with the county clerk of the county where the employer resides or has a place of business.

§ 13 (Labor Law Art. 7, § 219-c) Public Notices

* Provides Commissioner discretion to post notices of violations at worksite. Limits amount of time postings must be kept visible (employ-

http://nyslrs.state.ny.us/NYSLBDC1/bstfrme.cgi                                    12/1/2010

ee-visible notices max. 1 year; publicly visible notices max ninety days). Limits posting of notices visible to public to instances of willful violations.
* Provides for a misdemeanor for any person who defaces or removes such a posting without authorization.

§ 14 (Labor Law Art. 19, § 661) Records of Employers

* Moves record-keeping and pays tub requirements under the Minimum Wage Act from regulation to statute. Requires that employer maintain records for six years, as is already required by regulation.
* Requires employers to allow DOL investigators to interview employees without interference and in a private location.

§ 15 (Labor Law Art. 19, § 662) Criminal Penalties under Minimum Wage Act

* Closes a loophole in criminal penalties that apply to wage theft by extending the same penalties that cover record keeping violations and non-payment of wages to also cover minimum wage non-payment.

§ 16 (Labor Law Art. 19, § 663) costs, Remedies for Minimum Wage/Overtime Claims

* Replicates amendments made to § 198 (nonpayment of wage claims) in § 663 (nonpayment of minimum wage claims).

§ 17 provides that the act shall take effect on the 120th day after it becomes law.


JUSTIFICATION:
Studies indicate that a large number of employees are earning less than minimum wage and others are being paid less than their correct wage. Many employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend. The penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent – this will change dramatically with this, legislation. Penalties for violating employee rights would be increased in order to far better protect workers' rights and interests.


PRIOR LEGISLATIVE HISTORY:
New legislation.


FISCAL IMPLICATIONS:
Minimal.


EFFECTIVE DATE:
This shall take effect on the one hundred and twentieth day after becoming law.

---

000008

# TAB  B



**New York State Department of Labor**
David A. Paterson, *Governor*
M. Patricia Smith, *Commissioner*

December 2, 2009



Re:  Request for Opinion
     Call-In Pay
     RO-09-0133

Dear [REDACTED]

This letter is written in response to your email of September 23, 2009 in which you request an opinion as to the manner in which the Department of Labor determines compliance with the call-in pay provision in regulation 12 NYCRR §142-2.3. Attached to your email was an opinion letter from this office dated May 12, 2006 [RO-05-0103] from Senior Attorney Benjamin T. Garry which states, in relevant part to your inquiry, that "the Department of Labor computes the total minimum wage due to an employee for the workweek and compares it with the compensation actually received for that workweek." Your letter asks whether that letter remains accurate as to the Department's current method of determining compliance with the call-in pay provision. Please be advised that the letter accurately reflects the Department's current methodology for computing call-in pay.

Regulation 12 NYCRR §142-2.3, which is entitled "Call-in pay," provides, in full, that "[a]n employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage." That regulation applies to all employees covered by the Miscellaneous Wage Order, regardless of their agreed rate of pay. However, since Regulation 12 NYCRR §142-2.9 provides that the basis for the minimum and overtime wage payment required by the Miscellaneous Wage Order shall be weekly, the call-in pay provision only requires additional payment where an employee's wages for the workweek are less than the minimum and overtime wage rate for all hours worked plus any call-in pay owed. In other words, if the amount paid to an employee for the workweek exceeds the minimum and overtime rate for the number of hours worked and the minimum wage rate for any call-in pay owed, no

Tel: (518) 457-4380, Fax:  (518) 485-1819
W. Averell Harriman State Office Campus, Bldg. 12, Room 509, Albany, NY 12240

www.labor.state.ny.us                                                    bceijs@labor.state.ny.us

additional payment for call-in pay is required during that workweek.  Accordingly, in line with the reasoning expressed above, the opinion expressed in the letter attached to your email remains accurate as to the method of determining compliance with Regulation 12 NYCRR §142-2.3.

This opinion is based on the information provided in your email of September 23, 2009. A different opinion might result if the circumstances outlined in your letter change, if the facts provided were not accurate, or if any other relevant fact was not provided.  If you have any further questions, please do not hesitate to contact me.

Very truly yours,

Maria L. Colavito, Counsel

By:

Jeffrey G. Shapiro
Associate Attorney

JGS:mp
cc:  Carmine Ruberto