**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

ESSENCE TAYLOR AND DANIEL CASHMAN,
*On behalf of themselves and all*
*employees similarly situated,*

                    Plaintiffs,

          v.

DELTA-SONIC CAR WASH SYSTEMS, INC,
AND RONALD BENDERSON,

                    Defendants.

14-CV-6698

---

**FINAL ORDER AND JUDGMENT APPROVING RULE 23 CLASS ACTION**
**SETTLEMENT AND SETTLEMENT AGREEMENTS PURSUANT TO THE FLSA, AND**
**AWARD OF ATTORNEYS' FEES, SERVICE AWARDS AND REIMBURSEMENT OF**
**EXPENSES AND COSTS**

### Findings of Fact

1. On December 15, 2014, Essence Taylor and Daniel Cashman ("plaintiffs"), former employees of defendant Delta-Sonic Car Wash Systems, Inc. (hereinafter "Delta-Sonic") and Ronald Benderson (collectively, "defendants") filed a complaint alleging that defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). See Complaint (Docket # 1).

2. Delta-Sonic operates twenty-nine car wash facilities in New York, Pennsylvania and Illinois. Plaintiffs' claims against the defendants concern an employee position known as Delta

1

Technicians. Although these employees are paid an hourly rate that is less than minimum wage, they also are eligible to earn tips from customers of the car wash. Delta-Sonic guarantees that, after including tip income, Delta Technicians will earn an hourly rate equal to or greater than minimum wage. If weekly tip income is insufficient to equal minimum wage, Delta-Sonic provides additional pay to make up the difference.

3.    The gist of the complaint is not that the defendants failed to pay each Delta-Technician an hourly wage equal to or greater than the allocable minimum wage, but that Delta-Sonic violated federal and state wage laws by failing to give notice to employees that they would receive less than minimum wage and failing to include allowances for tips on a separate line on employees wage records. The plaintiffs also alleged that the defendants failed to compensate employees for uniform maintenance.

4.    Plaintiffs brought their FLSA claims as a collective action under 29 U.S.C. § 216(b) and their NYLL claims as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") on behalf of themselves and a putative class of Delta Technicians.

5.    Defendants answered the Complaint (Docket #7) and denied all of plaintiffs' claims. Thereafter, the parties engaged in discovery. Discovery included the exchange of

2

documents, interrogatories and three depositions. The defendants deposed the two named plaintiffs and the plaintiffs deposed the Vice President/Chief Financial Officer of the Delta-Sonic.

6.   On June 1, 2015, plaintiffs moved to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. On July 14, 2015, the defendants responded to the class certification motion. The defendants also cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion for class certification was fully briefed. With the consent of defense counsel, plaintiffs did not file a response to the summary judgment motion. Instead, the parties decided to pursue a negotiated settlement.

7.   On October 16, 2016 the parties participated in a one-day mediation with mediator William G. Bauer, Esq. in which a complete settlement was reached. Thereafter, the parties executed a Settlement Agreement that fully and finally resolved plaintiffs' claims against the defendants. Without conceding the validity of plaintiffs' claims and without admitting liability or any wrongful conduct, the defendants agreed to create a Settlement Fund of eight hundred thousand dollars ($800,000) in order to resolve plaintiffs' claims. The settlement included the filing of an amended complaint that

alleged state law claims on behalf of current and former Delta-Sonic employees who worked for the defendants in Illinois and Pennsylvania. According to plaintiffs' counsel, the Settlement Agreement "secured monetary relief for every single one the more than 13,000 Class Members, based on length of employment." See Decl. of Robert L. Mullin (Docket # 71) at ¶ 26. The final Settlement Agreement was signed on January 12, 2016. The amended complaint (Docket # 61) was filed on January 29, 2016.

8. On January 29, 2016, plaintiffs filed an unopposed motion (Docket # 62) asking the Court to preliminarily approve the proposed settlement and provisionally certify both a Rule 23 Class and an FLSA Class for settlement purposes. The motion also sought court approval of the notice to class materials.

9. On February 17, 2016, the Court entered an Order (Docket # 63) preliminarily approving the settlement, certifying a settlement class, and authorizing the dissemination of notice. The parties chose a settlement administrator who provided notice to the class. The "Notice To Class of Proposed Settlement" (Docket # 62-5) informed class members of their allocated settlement amount, described their right to opt out of the action, described the process that must be followed in order to dispute their allocated settlement amount, and stated Class Counsel's intent to seek the payments of "up to $10,000" to the

4

two named plaintiffs "for their time and effort in bringing this lawsuit", "reasonable attorneys fees for [counsels'] efforts in litigating and settling this lawsuit" as well as "reasonable expenses in bringing this lawsuit." Id.   The Court scheduled a final settlement hearing for July 8, 2016.

10.   Between February 17, 2016 and July 8, 2016, neither plaintiffs nor defendants filed any additional support for approval of the settlement or for any other relief, including attorney fees.   The only document the Court received prior to the final settlement hearing was a wholly inadequate one page letter from plaintiffs' counsel requesting final approval of the settlement and the award of $320,000 or forty percent of the settlement fund in attorney fees.   Plaintiffs' letter request was never docketed.   See July 8, 2016 Transcript of Proceedings (Docket # 72) (hereinafter "Transcript") at 3.

11.   On July 8, 2016, all counsel appeared for the final settlement hearing.   The Court denied approval of the settlement for various reasons set forth on the record.   (The Transcript of the July 8, 2016 proceedings is hereby incorporated by reference into this Decision and Order.)   Suffice it to say the un-docketed "letter request" for final approval of the settlement and an award of attorney fees was grossly deficient in several respects.   First, as the Court reminded counsel at the hearing,

5

this Court acts as a fiduciary to the proposed class in evaluating the settlement. Therefore, it was incumbent on counsel to make sure that the Court was provided with sufficient information to find that the settlement was both substantively and procedurally fair and in the best interests of the class. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). Although the Court gave preliminary approval to the proposed settlement, as plaintiffs' counsel acknowledged in their brief in support of that approval, "a court's review of a proposed class settlement is a two-step process" and the standard for final approval is far more rigorous than simply whether the proposed settlement is "within the range of possible approval." See Pls.'s Mem. of Law in Support of Preliminary Approval (Docket # 62-2) at 13 (internal quotations and citations omitted). Counsel here made absolutely no attempt to address whether the proposed settlement satisfied the Grinnell factors.

12. As I stated during the July 8, 2016 hearing, the plaintiffs' "letter request" for the Court to simply rubberstamp their application to designate forty percent of the settlement fund to attorney fees was particularly troubling. See Transcript at 6. In their motion for preliminary approval of the settlement, plaintiffs' counsel represented to the Court

that they would submit a "request for reasonable attorney fees" in their motion for final approval. See Docket # 62-2 at 6. Nothing was ever filed explaining or justifying an award of attorney fees. The failure of plaintiffs' counsel to submit any contemporaneously kept time records was especially frustrating considering well-established attorney fee application requirements in the Second Circuit. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); see also Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (Except in the "rarest of cases" lawyers "are required to submit contemporaneous records with their fee application."); see also Camacho v. Ess-A-Bagel, Inc., No. 14-cv-2592, 2014 WL 6985633, at *5 (S.D.N.Y. 2014) (denying attorneys' fee application in FLSA case where counsel failed to submit time records).

13. Other deficiencies in the application for final approval were identified by the Court during the July 8, 2016 hearing. For example, counsel sought over $5000.00 for costs,

7

but no costs were identified or justified by plaintiffs' counsel.    The proposed settlement sought to pay a settlement administrator $70,000, but the only documentation from Rust Company, the proposed administrator, estimates their costs to be $59,794, twenty percent less than what plaintiffs are seeking. Finally, although promised in plaintiffs' motion for preliminary motion for settlement approval, plaintiffs' counsel presented no factual or legal justification for a "service award" request of $10,000 to each of the two named plaintiffs in this action.    See Transcript at 8-9.

14.    Despite the obvious deficiencies in the joint motion to approve the settlement, the Court denied the motion without prejudice, allowing counsel to file an actual motion for final approval of the proposed settlement.    On July 19, 2016, plaintiffs' counsel filed a motion for Final Settlement Approval and Class Certification (Docket # 67) and a Motion for Attorney Fees (Docket # 70).    These two motions are currently pending before this Court.

### The Proposed Settlement

15.    The Settlement Agreement proposes to establish three settlement classes:

8

(a)   New York Tip Allowance Class: The agreement defines this class as "[a]ny Delta-Sonic current or former employee who work(ed) at one of Delta-Sonic's car wash centers in New York between December 15, 2008 and October 16, 2015, and, not accounting for the cash tips he or she received in a pay period, was paid a gross (pre-tax) amount less than the applicable minimum wage rate multiplied by the number of regular hours he or she worked in that pay period." The distribution for this sub class ranges from $7.50 to $127.50.

(b) IL/PA Tip Allowance Class:   The agreement defines this class as "[a]ny Delta-Sonic current or former employee who work(ed) at one of Delta-Sonic's car wash centers in Illinois or Pennsylvania between December 15, 2011 and October 16, 2015, and, not accounting for the cash tips he or she received in a pay period, was paid a gross (pre-tax) amount less than the applicable minimum wage rate multiplied by the number of regular hours he or she worked in that pay period." The distribution for this sub class ranges from $7.50 to $127.50.

(c)   New York Uniform Laundry Class:    The Settlement Agreement defines this class as "[a]ll Delta-Sonic current and former employees who work(ed) in the last six years at its 19 New York car wash centers and were not paid for uniform laundry

and maintenance expenses." The distribution for this sub class ranges from $2.50 to $57.50.

16.    The payment to each class member hinges on the number of weeks the employee worked for Delta-Sonic during the six year statute of limitations period applicable to the New York class members and the three year statute of limitations period applicable to the Illinois and Pennsylvania class members.

17.    The named plaintiffs (Essence Taylor and Daniel Cashman) seek service payments of $10,000.00 each. According to plaintiffs' counsel, the named plaintiffs "met extensively with Plaintiffs' Counsel, and gave lengthy depositions." Mullin Decl. (Docket # 71) ¶ 31. No further details regarding the participation of either Taylor or Cashman have been provided and no affidavit from either of them has been submitted. Plaintiffs' counsel proposes that the service payments be in addition to the shares of the funds that Taylor and Cashman would otherwise be eligible for under the terms of the Settlement Agreement.

18.    The parties agreed that the settlement funds will have costs, attorneys' fees, service payments and employer taxes deducted from it, and the remaining balance will be distributed to Class Members. Under the terms of the Settlement Agreement, no claim forms will be required. It contains a *cy pres*

10

provision donating uncashed checks to Women and Children's Hospital of Buffalo. The proposed Claims Administrator, the Rust Company, requests a fee of $70,000 for services rendered and to be rendered in effectuating the settlement. Mullin Decl. at ¶ 31.

19. Notice of the proposed settlement was mailed to 13,963 Class Members and approximately 349 notices remain undeliverable. The approved notice advised class members of their options and how to receive a share of any award or settlement. The approved notice also advised class members of their right to object or be excluded from the class. As of July 11, 2016, no objections had been received by the class administrator and five requests for exclusions had been received No individuals appeared at the July 8, 2016 hearing to object or otherwise participate.

20. The defendants do not oppose the plaintiffs' motion for certification or final approval of the settlement. According to plaintiffs' counsel, the defendants made the following statement with respect to the proposed settlement:

> Despite their strong defenses in the case, Defendants have concluded that it is in their best interests to settle this litigation. Defendants do not admit that the claims are true, that Plaintiffs would ultimately succeed on the merits, or that they are liable to Plaintiffs (or the Class) for any damages; instead, Defendants wish to settle only to avoid the burden,

expense, and uncertainty of continued litigation. While $800,000.00 was on the very high end of what Defendants were willing to pay to end this case - given their belief that summary judgment would likely have been granted in their favor - the anticipated costs to continue to litigate this large class action (if it did go to trial) were massive. Thus, while the risk of an adverse judgment was low, any measurable risk, when combined with those costs and the burden of continued litigation, made settlement the more prudent business decisions.

Mullin Decl., at ¶ 39.

## Conclusions of Law

### A. Motion for Final Certification of Class and Collective Action.

1. The Court finds that certification of the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure is appropriate as the proposed settlement meets the requirements of Rule 23. The numerosity requirement is met because the proposed settlement class consists of over 13,000 individuals. The commonality and typicality requirements are met because there are obvious questions of law and fact common to and typical of all class members: the adequacy of the notice regarding the tip credit and the adequacy of the facilities provided to class embers to launder their uniforms. All class members have suffered the same type of injury and in that sense are unified in common factual allegations against the defendants. I find that the putative class members have been fairly and adequately represented by class counsel, both of whom

12

have the expertise and experience to represent the class members in this action.   Finally I conclude that a class action is the superior method of adjudicating this controversy because the named plaintiffs and class members lack the means to prosecute individual actions, individual lawsuits would not be economically worthwhile, no individual litigation is pending in other forums and there is no evidence that class members would have a strong interest in controlling the suit themselves.   In sum, a class action is the most economic and efficient mechanism to fairly and resolve the class claims against Delta-Sonic. Therefore, plaintiffs' motion for final certification of the settlement class pursuant to Rule 23 is hereby approved.   For substantially the same reasons, the Court also grants the plaintiffs' request to certify an FLSA collection action for purposes of settlement.

2.   The Court next turns to the fairness of the proposed settlement.   "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."   Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005).

3.   In the Second Circuit, courts often evaluate a settlement's substantive fairness according to the so-called "Grinnell factors."   See City of Detroit v. Grinnell Corp., 495

F.2d 448, 454 (2d Cir. 1974). The factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Id. at 463.

4. Having considered the relevant Grinnell factors, the Court finds they support final approval of the proposed settlement. FLSA and class action cases can be complex and expensive to litigate, often requiring protracted periods of litigation. No objection to the proposed settlement has been received by the class administrator or the Court. Based on the representations of plaintiffs' counsel, I find that although this case settled at a fairly early stage, sufficient factual investigation of the case has been conducted and the parties have adequate information to properly evaluate and understand the strength and weaknesses of their positions and the risks

14

faced with continued litigation.  The Court also concludes that the risks plaintiffs face in proving liability and establishing damages in this case are real and favor final approval of the settlement.  I find the defendants' ability to withstand a greater judgment is not a relevant factor in evaluating this particular settlement.  Finally, based on my review of the entire record, including the defendants' summary judgment motion and the declaration submitted by Robert Mullin, Esq. in support of the settlement, the Court finds that settlement is within an acceptable range of reasonableness given the risks of continued litigation.

5.   As to procedural fairness, the Court concludes that plaintiffs were represented by competent counsel with experience in wage and hour litigation.  The Settlement Agreement appears to be the result of arms-length negotiations culminating in an agreement reached with the assistance of an experienced and respected mediator.  There is no evidence of fraud or collusion infecting the settlement process or the agreement reached.

6.   Therefore, considering the totality of the circumstances set forth in the record before this Court, I conclude that the agreement is both procedurally and substantively fair and reasonable.

B.   Motion for Attorney Fees, Service Payments and Costs.

7.    Plaintiffs' counsel has filed an application for attorney fees in the amount of 40 percent of the settlement fund or $320,000.   As the fiduciary for the rights of the absent class members, I previously expressed concerns over the amount of attorney fees sought by plaintiffs' counsel in their "letter request."   My review of the docket sheet suggests that although the case involved a relatively large class, the litigation was fairly straightforward, involved a relatively discrete, although unsettled, legal issue and generated limited motion practice. The complaint was filed on December 15, 2014, and the matter was settled less than a year later after a one-day mediation session.    It appears that the plaintiffs only deposed one individual, a Rule 30(b)(6) representative of Delta-Sonic, and the defendants deposed only the two named plaintiffs.

8.    Given my fiduciary responsibilities towards the absent class, counsel should not be surprised by the Court's scrutiny of the pending attorney fee application.    Plaintiffs' motion papers emphasize the fact that their fee application is unopposed.    However, the lack of opposition is really of little moment.    "Often, fee applications are unopposed. Defendants have little concern for what portion of the settlement goes to plaintiffs' counsel. And unlike a securities class action, where

16

the class likely contains sophisticated investors, most FLSA class members are not in a position to object." Lizondro-Garcia v. Kefi LLC, No. 12-civ-1906, 2015 WL 4006896, at *4 (S.D.N.Y. Jul. 1, 2015) (quoting Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) ("Those best suited to dispute the fees—the class representatives—would be forced to oppose their own lawyers and in any event are often placated with outsized service awards. The risks presented by class action settlement—and the need for judicial scrutiny—have long been recognized.")). Ultimately, "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000).

9. Plaintiffs' lawyers ask the Court to award 40 percent of the settlement fund or $320,000 as reasonable attorneys' fees. While counsel seeks a percentage of the fund, they also recognize that "[e]ither percentage of [the] award or Lodestar is an appropriate method to award fees." See Pls.' Mem. of Law in Support of Unopposed Motion for Attorney Fees and Costs (Docket # 70-1) at 4. Plaintiffs' lawyers also agree that "when the percentage method is used, courts typically perform the lodestar calculation also as a cross-check." Id. at 5. In support of the pending motion, plaintiffs' counsel have

submitted time records. Indeed, "it is beyond dispute that district courts must consider the attributes of the lodestar as compared to a percentage calculation in computing a reasonable attorneys' fee award." Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 308 (E.D.N.Y. 2015).

10.   The first step in using the lodestar calculation to cross-check plaintiffs' percentage of the fund fee request is to multiply the number of hours counsel reasonably expended in litigating the case to settlement by a reasonable hourly rate lawyers in this district would charge in a similar case. This calculation produces a presumptively reasonable fee. See Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee.") (internal quotation marks and citation omitted).

11.   Once the presumptively reasonable fee is calculated, the Court may enhance the fee when it does not "adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010). The Second Circuit has cautioned that such enhancements to the lodestar calculation should be awarded only in "rare circumstances." Millea v. Metro-North R. Co., 658

18

F.3d 154, 167 (2d Cir. 2011).  "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." Perdue, 559 U.S. at 552.

12.  Plaintiffs' counsel seek an across the board rate of $350 per hour for attorney time and $150 per hour for paralegal time.  Robert Mullin, Esq. has submitted time records claiming 362 hours of out of court time and 3.83 hours of in-court time for a total of 365.83 hours.  Justin Cordello, Esq. has submitted time records claiming 325.72 hours of out of court time and no in-court time for a total of 325.72 hours.  Thus, the total hours claimed for attorney time at the $350 hour rate is 691.55 hours resulting in a requested award of $242,042.50. Both Cordello and Mullin claim hours for work as a paralegal. Cordello claims 1.72 hours of paralegal time and Mullin claims 30.33 hours of paralegal time, for a total of 32.05 hours, resulting in a request for $4,551.22 based on a paralegal rate of $150 per hour. Based on the time records, the total sought for attorney time and paralegal time is $246,593.72.[1]  This sum represents 30.82 percent of the total settlement.  Counsel for plaintiff requests an enhancement of approximately 30 percent

---

[1] Plaintiffs' motion papers in support of an award of attorney fees contain inconsistent time calculations.  The contemporaneous time records submitted by counsel state that Justin Cordello spent 325.72 hours of time on legal work billed at $350.00 per hour.  Yet, in Mr. Mullin's sworn declaration (Docket # 71 at ¶ 33) he avers that these same time record demonstrate that Mr. Cordello spent 328.11 hours of time on legal work billed at $350.00 per hour.  The Court has used the calculations summarized on the contemporaneous time records in this Decision and Order.

based on "excellent results as well as the substantial risks incurred by taking this case on a contingency basis." See Pls.' Mem. of Law in Support of Unopposed Mot. for Attorney Fees and Costs (Docket # 70-1) at 13. Application of the 1.30 multiplier results in the requested fee of $320,000. Accordingly, plaintiffs argue the lodestar cross check justifies the requested fee of 40 percent of the settlement fund.

13. Of course, central to counsel's lodestar calculation is the $350 per hour rate they have chosen to apply to their legal services. "The reasonable hourly rate is, generally, the hourly rate employed by attorneys in the district in which the litigation is brought." Mendez v. Radec Corp., 907 F.Supp.2d 353, 357 (W.D.N.Y. 2012). Judge Wolford recently discussed the hourly rates used in fee applications involving civil rights and labor and employment law in the Western District of New York.

> The hourly rates generally allowed in this District for a case such as this are in the range of $225-$250 for partner time or senior associate time, $150-$175 for junior associate time, and $75 for paralegal time. Indeed, while Defendants do not contest an award of $300 for senior partner time in this case, that rate is at the high end of what has typically been awarded in this District for similar types of cases. See Anello v. Anderson, 2016 WL 3221863, at *12 (W.D.N.Y. June 10, 2016)(applying rate of $225 per hour for partner, $150-175 per hour for associate, and $75 per hour for paralegal, in addition to hourly rates of $200-250 for trial counsel, in § 1983 action); Glenn v. Fuji Grill Niagara Falls, LLC, 2016 WL 1557751, at *7 (W.D.N.Y. Apr. 18, 2016)(finding, in Title VII action, prevailing party entitled to attorneys' fees

based upon hourly rate of $250 for senior associate
with 11 years' experience and $75 for paralegal, as
rates were "in line with those rates prevailing in the
community for similar services by lawyers of
reasonably comparable skill, experience, and
reputation" (quotation omitted)); Tyo v. Lakeshore
Hockey Arena, Inc., No. 11-CV-6239-CJS-MWP, 2014 WL
2532447, at *3 (W.D.N.Y. June 5, 2014) (hourly rate of
$250 reasonable for lawyers with 15 and 25 years'
experience in labor and employment law); Disabled
Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC, 688
F.Supp.2d 216, 226 (W.D.N.Y. 2010) (in Americans with
Disabilities Act claim where plaintiff prevailed on
summary judgment motion, reducing hourly rate of
partner with more than 30 years of practice from $425
to $240, attorney with more than 20 years of practice
from $350 to $200, and paralegal hourly rate to $75).
Cf. Peacock v. City of Rochester, No. 6:13-cv-6046-
MAT, 2016 WL 4150445, at *7 (W.D.N.Y. Aug. 5, 2016)
(with exception for so-called "highly experienced
attorneys," Court found $225 hourly rate for partners
and $175 hourly rate for associates in line with rates
awarded to attorneys with comparable experience in the
District).

Costa v. Sears Home Improvement Products, Inc., No. 12-cv-6235,

2016 WL 5266524, at *5 (W.D.N.Y. Sept. 22, 2016).

14. I find these hourly rates ($225-$250 for partner time

and $75 for paralegal time) to be the appropriate rates to be

applied in this FLSA case. While both Mullin and Cordello have

experience in FLSA cases, neither has spent decades practicing

law. Mr. Mullin was admitted to practice law in 2008 and

Cordello in 2003. An hourly rate of $250 for legal services and

$75 for paralegal time strikes this Court as both fair and

reasonable given their years in practice and the hourly rate

employed by comparable attorneys here in the Western District.

15. Applying these rates yields a total presumptively reasonable fee of $172,887.50 for attorney time and $2403.75 for paralegal time. The resulting total fee is $175,291.25.

16. Plaintiffs' counsel agreed to take this case on a contingency fee basis, an arrangement that has been held to constitute a risk not inherent in other types of billing arrangements for legal services. "The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred." Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014). Counsel seeks a lodestar enhancement of thirty percent and I find their request reasonable. With the lodestar adjustment of thirty percent, the lodestar calculated fee as enhanced would be $227,878.63.

17. The foregoing lodestar calculation does not support a percentage of the fund fee of forty percent, but would, in my view, support a cross-checked percentage of the fund fee of thirty three (33%) percent of the total settlement or $264,000. Therefore, the Court hereby grants the Attorneys' Fees Motion and awards fees in the amount of $264,000, or thirty three percent (33%) of the $800,000 Settlement Fund.[2] Increasing the

---

[2] Although not dispositive, I note that awarding attorney fees of one third of a settlement fund in FLSA actions has been viewed as "consistent with the norms of class litigation" in the Second Circuit. See deMunecas v. Bold Food, LLC, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010)(collecting cases); see also Aros v. United Rentals, Inc., No. 11-cv-1285, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) (collecting cases

lodestar calculated fee to 33% of the settlement fund would also compensate plaintiffs' counsel for any time they will spend administering the settlement. See Aros v. United Rentals, Inc., 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) ("The fee Class Counsel requests is also reasonable because they will continue to perform work on behalf of the Class but will not make a supplemental fee application. Class Counsel has a continuing obligation to represent the Class during the settlement approval process and the disbursement phase.").

18.    Class Counsel are also awarded reimbursement of litigation costs and disbursements in the amount of $5407.45. In making this award, the Court is relying on the truth and accuracy of the representations made in paragraph 33 of Mr. Mullin's July 19, 2016 Declaration (Docket # 71).

19.    Counsel for plaintiffs seek court approval for payment of $10,000 "service payments" to Essence Taylor and Daniel Cashman, the named class representatives.    Granting service payments or incentive awards to class representatives is within the discretion of the Court.

> In calculating incentive fees, courts consider: the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in

---

awarding 33% of settlement fund for attorney fees in FLSA class action litigation).

> assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

20. "Courts have reduced, rejected or questioned incentive awards where named plaintiffs 'did not perform any extraordinary services to the class.'" In re Western Union Money Transfer Litig., No. CV-01-0335, 2004 WL 3709932, at *16 (E.D.N.Y. Oct. 19, 2004) (quoting Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720-21 (E.D.N.Y. 1989)). Here, it is difficult for the Court to exercise its discretion because plaintiffs' counsel have provided scant information on what Taylor and Cashman did to justify the $10,000 awards they seek. Nothing has been submitted from either Taylor of Cashman describing the time or efforts they made to assist counsel in achieving this settlement or any risk they incurred in becoming class representatives.

21. I realize neither Taylor nor Cashman are lawyers. Clearly the responsibility to defend and explain a service award that was negotiated as part of a Settlement Agreement falls more on counsel than the named plaintiffs. Nevertheless, the Court cannot create a factual record justifying a substantial service

award out of thin air. All I can discern from the application before the Court is that on June 25, 2015 Taylor and Cashman briefly met with counsel to prepare for their deposition and on June 29, 2015 both were deposed by defense counsel. I do not see Taylor or Cashman's names in any other time records. Moreover, despite my _specific_ suggestion to do so,[3] plaintiffs' counsel has not submitted an affidavit from either Taylor or Cashman describing their efforts or any risk they incurred in being the named class representatives in this case. See Altnor v. Preferred Freezer Services, Inc., NO. 14-7043, 2016 WL 3878161, at *19 (E.D. Pa. July 18, 2016) ("A rubber-stamped approval by the Court of an unjustified incentive award is fodder for abuse.").

22. Giving Taylor and Cashman every benefit of their documented participation in this relatively brief litigation, the Court finds that a service award of $5000.00 to the Class Representatives is reasonable and justified. See, e.g., Hall v. ProSource Technologies, LLC, No. 14-cv-2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (awarding $3,500.00 to each named plaintiffs from $1,250,000 fund); deMunecas, 2010 WL 3322580, at *10 (awarding $5000 service payments to class representatives

---

[3] During the July 8, 2016 hearing I pointedly asked plaintiffs' counsel: "Where is [Taylor and Cashman's] application? How can I approve these $10,000 a piece service payments if I don't have an application from them?" See Docket # 72, at 9.

from $800,000 fund); <u>McMahon v. Olivier Cheng Catering and Events, LLC</u>, NO. 08-cv-8713, 2010 WL 2399328, at *8-9 (S.D.N.Y. Mar. 3, 2010) (awarding $5000 service payments to two class representatives from $400,000 fund). Counsel shall instruct the settlement administrator to pay, or direct payment of $5000.00 to the two Class Representatives: (1) Essence Taylor and (2) Daniel Cashman. These amounts shall be drawn from the Settlement Fund and be in addition to the payments they are entitled to under the terms of the Settlement Agreement as class members.

23. The Court's decision to reduce the plaintiffs' proposed attorneys' fees and class representative award will necessarily increase the Net Settlement Fund, as defined in paragraph 24 of the Settlement Agreement. <u>See</u> Docket 68-2, at ¶ 24. Pursuant to paragraph 60(c) of the Settlement Agreement, the claims administrator shall increase each class member's settlement payment under paragraph 58, on a pro rata basis, so that the Net Settlement Fund is fully disbursed.

24. The Court will grant the parties' request to allow $70,000 for the fees and expenses of the settlement administrator. <u>See</u> Decl. of Bruce Holman (Docket # 69), at ¶ 14. This request is reasonable in light of the proposed class size of nearly 14,000 people, and the costs and expenses associated with mailing notices to all of those people,

providing telephone support, processing and administering the notices, and distributing the awards and tax documentation to the claimants. See id. Cf. Acevedo v. Workfit Medical, LLC, 187 F. Supp. 3d 370, 386 (W.D.N.Y. 2016) (approving settlement administrator fees of $27,500 for a class of 900 people).

25. Upon the Effective Date of the Settlement Agreement, this action shall be deemed dismissed with prejudice in its entirety. The parties are to bear their own costs, except as otherwise provided in the Settlement Agreement and this Order. The Court shall retain jurisdiction over the above-captioned actions for the purpose of resolving any issues relating to the administration, implementation, or enforcement of the Settlement Agreement and this Order. The parties are to inform the Court immediately upon the occurrence of the Effective Date of the Settlement Agreement.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      January 31, 2017
            Rochester, New York